CASE 103—VALIDITY OF PAROLE LAW—JUNE 13.

# George, et al., Commissioners, Etc. v. Lillard, Warden.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. CONSTITUTIONAL LAW—PAROLE ACT.—The act of May 2, 1888. conferring on the Commissioners of the Sinking Fund the power, under certain conditions, to parole convicts, is not unconstitutional either (1) as an infringement of executive prerogative, or (2) as a violation of the constitutional requirement that convicts shall be confined within the walls of the penitentiaries.

2. STATUTES—REPEAL.—The parole law of May 2, 1888, was not repealed by the act of 1898, creating a prison board, but the powers conferred and the duties imposed by the former act yet rest with the Commissioners of the Sinking Fund.

JOHN W. RAY FOR THE APPELLANT. (C. P. CHENAULT OF COUNSEL.)

1. The parole law as found in the Kentucky Statutes, secs. 3828-3836 is not unconstitutional either in invading the executive prerogative, or in invading the jurisdiction of the courts as to the suspension, reversal or annulment of judgments of conviction or as a violation of section 253 of the Constitution. State v. Peters, 43 Ohio St., 629; People v. State Reformatory, 148 Ill., 413; George v. People, 167 Ill., 447; Miller v. State, 49 N. E. R., 894; Murray v. Com., 52 N. E. R., 505; s. c. 87 Fed. Rep., 549; Oliver v. Oliver, 169 Mass., 592; Com. v. Brown, 167 Mass., 144.

2. It was clearly the intention of the Legislature to invest the appellants with all the powers the Sinking Fund Commissioners had theretofore exercised so far as the penitentiary, was concerned. People v. Cummins, 88 Mich., 249; Debates Constitutional Convention, pp. 5315, 5386, 5389, 5390, 5391; Com. Sinking Fund v. George, 47 S. W. R., 779.

W. S. TAYLOR, ATTORNEY-GENERAL, AND M. H. THATCHER FOR APPELLEE.

1. The parol law is unconstitutional and an invasion of the executive prerogative, of the power of the courts over judgments of conviction and as a violation of the provisions of the State Constitution which required convicts to be kept within the walls of the penitentiary.

2. If the parole law be held constitutional, then the power to parole vests in the Sinking Fund Commissioners and not in the prison board.

   Citations: Acts 1879, vol. 1, p. 147; acts 1887-8, vol. 1, p. 115; acts 1889-90, vol. 1, p. 66; acts 1898, ch. 4; acts 91-2-3; ch. 194; Com. v. Holloway, 42 Pa., 448; State v. Peters, 4 N. E. R., 81; People v. Cummins, 14 L. R. A., 285; 23 Am. & Eng. Ency of Law, 357.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The questions here involved are: (1) Is the act known as the "Parole Law" still in force? If so, is it to be executed by the Board of Penitentiary Commissioners or by the Commissioners of the Sinking Fund? (2) Is it constitutional?

Until 1898 the control and management of the penitentiaries of the State was vested in the Commissioners of the Sinking Fund; the Governor, Auditor, Treasurer, Secretary of State, and Attorney General *ex officio* constituting the commissioners. By the act of May 2, 1888, upon specified conditions, the commissioners of the sinking fund were authorized to allow persons confined in the penitentiaries, except those who were convicted of certain offenses, to go on parole outside of the buildings and the inclosure of the penitentiaries, free from the custody and control of the warden, but to remain in the legal custody and control of the commissioners, subject at any time to be taken back and confined in the penitentiary. Full power to enforce rules and regulations for retaking and reimprisoning any convict upon parole existed. To retake such prisoner, *the written order of the commissioners, when signed by the Governor* and attested by the Secretary of State, constituted a sufficient warrant to authorize sheriffs and other officers to arrest such convict and deliver him to the custody of the warden. The expense of rearrest was to be paid by the State Treasurer when

the commissioners certified it for payment to the Auditor of Public Accounts. The act provided a penalty against the warden or any other officer in the State who failed to execute and obey the orders of the commissioners made or issued under the act.

It is contended that this law is no longer in force, because it has been repealed by the act which became a law in 1898, entitled "An act to create a Board of Penitentiary Commissioners and regulate the penal institutions of this Commonwealth."

It is true that under that act the management and control of the penitentiaries was taken from the commissioners of the sinking fund, and placed in the hands of the Board of Penitentiary Commissioners, but there is nothing in the act which makes any reference whatever to the parole law. That subject is not referred to in any way in the act. Repeals by implication are not favored.

We are of the opinion that the parole law has not been repealed.

It is contended, however, that, because the control and management of the penitentiaries was placed in the hands of the Board of Penitentiary Commissioners, the power to execute the law is vested in them. We do not think this is true, in the first place, because no express authority was conferred upon them, and, in the second place, the act provides for the reimprisonment of parole convicts. By the terms of the act, they can only be arrested and imprisoned upon the order of the Commissioners of the Sinking Fund, when signed by the Governor and attested by the Secretary of State. As the act denounces a penalty only for disobeying the orders of the Commissioners of the Sinking Fund, it would follow that no penalty could be imposed on any officer for disobeying the orders of the pen-

itentiary commissioners. The Legislature might have been perfectly willing to vest the power to parole prisoners in the Commissioners of the Sinking Fund, of which body the Governor was a member, but it might not have been willing to enact a law conferring such authority upon the Board of Penitentiary Commissioners. If the present commissioners were permitted to exercise this power, the Governor would not be associated with them in determining what convicts should have the benefit of the law.

We are of the opinion that the Board of Penitentiary Commissioners have no power to parole a prisoner under the law, and that that power is vested in the Commissioners of the Sinking Fund. Section 77 of the Constitution, in reference to the power of the Governor, reads: "He shall have power to remit fines and forfeitures, commute sentences, grant reprieves and pardons."

If paroling a prisoner is not a pardon of the prisoner, or commutation of the sentence, then the power vested in the Governor is not attempted to be interfered with. "A 'pardon' is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." United States v. Wilson, 7 Pet., 150. "A full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from all the disabilities consequent on his conviction." Com. v. Bush, 2 Duv., 264. A pardon discharges the individual designated from all or some specified penal consequence of his crime. It may be full or partial, absolute or conditional. Bouvier Law Dict. title, Pardon; 1 Bishop's Crim. Law (6th Ed.) section 914. It can not

be said to be a pardon because the prisoner remains subject to the control of the Commissioners of the Sinking Fund, and is subject to be rearrested, and, when rearrested, is compelled to remain in the penitentiary without getting any credit for the time between the parole and redelivery to the warden. He is not exempt from the entire punishment which the law inflicts. The Governor could at any time pardon him, and thus place it beyond the power of the Commissioners of the Sinking Fund to re-imprison him. It is not a commutation of the sentence, because it is not a change of the punishment of a person who has been condemned into a less severe one. If a man is sentenced to the penitentiary for twenty years and the Governor reduces the time to ten, if a party is sentenced to hang and the Governor changes the penalty to confinement in the penitentiary for life, or if a man was condemned to serve in the penitentiary for a given period and the Governor would say he should serve in the county jail for a shorter term, then we would understand in each case that there had been a commutation of the sentence. Whilst, in the case of a paroled prisoner, he enjoys his liberty outside of the walls of the penitentiary, yet he remains under the sentence to which he has been condemned, and may be reimprisoned at any time, as we have heretofore said. So, strictly speaking, it can not be said there has been a change of punishment to a less severe one. The parole law is not an interference with the judicial functions of the court, but is the exercise of the power of discipline which the State possesses, to be exercised through the legislative department of the government. The Legislature declares what shall constitute offenses, and prescribes the punishment, and the power to regulate the penal institutions of the State is there vested. It is

said the act is invalid by reason of section 253 of the Constitution, which reads as follows: "Persons convicted of felony and sentenced to confinement in the penitentiary shall be confined at labor within the walls of the penitentiary; and the General Assembly shall not have power to authorize employment of convicts elsewhere, except upon the public works of the Commonwealth of Kentucky, or when, during pestilence or in case of the destruction of the prison buildings, they can not be confined in the penitentiary." The purpose of the enactment of that section of the Constitution was to prevent the working of convicts by the State outside of the prison walls. That was the evil intended to be remedied by the prohibition contained in the section. It was not intended to prohibit the Legislature from enacting a law like the one under consideration, because, at the time of the adoption of the Constitution, such a law was in force, and the Constitutional Convention certainly would have, in express terms, declared the Legislature should not have power to enact such a law if it regarded it unwise to do so.

The judgment is affirmed.

JUDGE GUFFY DISSENTS.

The appellants, who are commissioners in control of, and managing the penitentiaries of the State, assumed the right to parole one John Dugan, a prisoner convicted of the offense of manslaughter. The authority to parole Dugan is claimed under the act of May, 1880, and amendments thereto.

It will be seen, by examination of the statutes in force prior to 1889, that the Governor, Attorney General, Auditor, Secretary of State, and Treasurer constituted the board of Sinking Fund Commissioners, and as such had the control of the penitentiaries, and were by law authorized to parole prisoners.

The effect of the parole was to discharge the prisoner from actual custody, and give him complete freedom of action. He could go where he chose to go, and laber for himself, and was allowed to dress as other citizens. He was, however, required, if he remained in the State, to report, through the county judge, twice a year, to the commissioners. The commissioners also had the right to order the arrest and return of the convict to prison.

The appellants in this case claimed and attempted to exercise the power to parol said Dugan, but the appellee Lillard, who is warden of the prison, refused to discharge Dugan, and appellants brought this suit to obtain a mandamus requiring appellee to respect the parole aforesaid.

The court below sustained a demurrer to the petition, and dismissed the action, and appellants prosecute this appeal.

The majority opinion affirms the judgment, and I concur in the affirmance. But the majority opinion takes up the question of the constitutionality of the so-called "Parole Law," and decides that it is constitutional, and may be enforced by the commissioners of the sinking fund.

I dissent entirely from the opinion in so far as it holds the act in question to be constitutional.

I am also of the opinion that the parole law stands repealed.

The acts of 1891-92-93 provided for the government of the penitentiaries, and it seems to me that under the rule announced in Broaddus v. Broaddus the parole law stands repealed.

The act of 1898 took the control and management of the penitentiaries from the sinking fund commissioners, and

vested it in appellants, and no reference was made to the parole law. If the parole law could be defended at all, it seems to me that it could only be for the reason that the officers in control of the prisoner would be able to exercise the power wisely; but now the power, according to the majority opinion, is vested in officers who have no knowledge of the conduct of the prisoners, nor any means of information except through other officers.

If, however, the parole law has not been repealed, I am of opinion that it is unconstitutional and void.

Section 77 of the Constitution provides that the Governor shall have power to commute sentences, grant reprieves and pardons.

Bouvier's Law Dictionary adopts Blackstone's definition of "reprieves," as follows: "The withdrawing of a sentence for an interval of time, which operates in delay of execution."

The parole provided for by the act under consideration is clearly a reprieve, and nothing else, and is therefore an invasion of the power vested in the Governor, and it is no answer to say that he is one of the commissioners. If the parole law is valid, a majority of the commissioners can exercise the power, although the Governor might oppose it.

Mr. Webster defines "reprieve" as follows: 1st. "To delay the punishment of; to suspend the execution of sentence; . . ." 2d. "To relieve for a time, or temporarily."

It is perfectly manifest that the so-called "Parole Law" is in law and in fact a reprieve, and also a conditional or partial pardon and therefore in conflict with section 77 *supra*.

Section 253 of the Constitution provides that: "Persons convicted of felony and sentenced to confinement in the penitentiary shall be confined at labor within the walls of the penitentiary; and the General Assembly shall not have power to authorize employment elsewhere, except upon the public works of the Commonwealth of Kentucky, or when during pestilence or in case of the destruction of the prison buildings, they can not be confined in the penitentiary."

It seems to me that section 253, *supra*, is absolutely conclusive of the question. It is so plain and positive that any attempt to explain the meaning is futile.

It is not claimed in the majority opinion that the paroled person is not still a convict.

The majority opinion says that the purpose of section 253 was to prevent the working of convicts by the State outside of the prison walls, etc. But it will be seen that the State may work the convicts on public works, and it is a canon of construction that, where a number of exceptions are made, all other exceptions are absolutely prohibited or disallowed.

It seems to me that a court should never construe a constitutional provision contrary to the express language thereof.

For the reasons given, and others not necessary to mention, I respectfully dissent from all that part of the opinion which holds the so-called "Parole Law" to be valid or constitutional.