# Board of Prison Comissioners v. Smith.

(Decided October 22, 1913).

## Appeal from Franklin Circuit Court.

1.  Prisoners—Parole of—Indeterminate Sentence Act—Discretion of Board of Prison Commissioners.—Prisoners convicted for crimes committed before the passage of the Indeterminate Sentence Act of 1910, and whose punishment was fixed by the verdict of a jury and the judgment of the court under the laws then in force, are not entitled to parole as a matter of right after the expiration of the minimum term prescribed by law for the offense for which they were convicted, but can be paroled only at the discretion of the Board of Prison Commissioners.

2.  Prisoners—Parole of—Board of Prison Commissioners—Discretion of.—Where the parole of a prisoner rests in the sound discretion of the Board of Prison Commissioners, that discretion will not be controlled by mandamus.

JAMES GARNETT, Attorney General for appellant.

L. A. FAUREST and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Appellee, Smith, was indicted for the crime of murder; and, being tried, was convicted of the crime of voluntary manslaughter, and his punishment fixed at confinement in the penitentiary for a period of twenty-one years. Smith v. Commonwealth, 140 Ky., 599. The crime was committed before the passage of the Indeterminate Sentence Act of 1910, hereinafter referred to. After being confined in the penitentiary for more than two years he applied for parole. His application was refused, and he brought this suit against the Board of Prison Commissioners to obtain a mandamus requiring them to grant him a parole. The circuit court adjudged him the relief sought, and the board appeals.

In order to clearly understand the situation, a brief review of the legislation upon the subject of parole of prisoners in this State, is necessary.

By the Act of 1888, the Commissioners of the Sinking Fund were given power and authority to make and establish rules and regulations for the conduct of the Kentucky Penitentiary, under which any person who was then or might thereafter be convicted and sentenced to confinement in the penitentiary for a felony, with certain exceptions, might be allowed to go on parole out-

side of the enclosure of the penitentiary, but to remain in the legal custody and control of the Commissioners. Under this Act it was a matter of discretion with the Commissioners whether a parole should be granted. Gen. Stat., 1888; Appendix, p. 95.

By the Act of March 21, 1900, the power given the Commissioners of the Sinking Fund by the previous Act was conferred on the State Board of Prison Commissioners, that Act making no substantial change in the previous law except to vest the power of granting a parole in the State Board of Prison Commissioners which had previously been vested in the Commissioners of the Sinking Fund; and under this Act, as under the former Act, the power to grant a parole was purely discretionary. Ky. Stats., Secs. 3828-3836.

By the Act approved March 16, 1910, the previous Act was repealed and more convicts were made eligible to parole than were eligible under the former Act. Acts 1910, p. 61.

By the Act approved March 20, 1912, it is expressly provided that the Commissioners may in their discretion grant or refuse applications for parole. Acts 1912, p. 653.

In Wilson v. Commonwealth, 141 Ky., 341, it was held that under the Act of 1910 a prisoner convicted under the Indeterminate Sentence Act was entitled, as a matter of right, to a parole after serving the term of his minimum sentence; but in that case, the questions of the rights of a person convicted prior to the passage of the Indeterminate Sentence Act of 1910, and the discretion of the Commissioners as to persons so convicted, were not presented.

The Wilson case passed only upon the rights of persons who had been convicted under the Indeterminate Sentence Law, and held such persons, who were eligible to parole under the Act, were entitled to parole after the expiration of the minimum term prescribed by the law and the sentence, since to longer confine the prisoner would be making his punishment, to that extent, depend solely upon the will of the Board of Prison Commissioners—a non-judicial body.

In that opinion the court said:

"It will be further observed that the act in question nowhere gives the board any power to nullify the action of the court in which the conviction of the prisoner was had; in any event, he must endure the minimum of imprisonment fixed by the court and undergo the labor in-

cident thereto, before the board can parole or discharge' him. It cannot imprison him beyond the maximum limit fixed by the judgment of the court, but may parole or discharge him before the maximum limit is reached, dependent, however, upon his conforming his life and conduct to the standard fixed for entitling him to such parole or discharge.

"A judgment inflicting punishment under this act, although a general one, is not rendered uncertain or indefinite because the prisoner may be paroled or discharged by the board before the maximum limit of imprisonment is reached; the fact that it must, under the judgment, continue for the minimum term and cannot exceed the maximum term, demonstrates the definiteness of the judgment. Any uncertainty in the extent of the punishment after the minimum limit is passed does not arise from uncertainty in the judgment or the statute, but from the uncertainty of the prisoner's conduct. In other words, if his conduct conforms to the standard of good behavior, fixed by the statute, his imprisonment will not continue to the end of the maximum term, but will end at a point somewhere beyond the minimum term and short of the maximum, when his conduct shows such conformity to the statutory standard as to entitle him to be discharged."

The opinion was confined in its scope to the rights of prisoners convicted under the Indeterminate Sentence Act; it in no way affected the rights or sentences of conviction of persons tried previous to the passage of that Act. The rights of this latter class were fixed by the verdict of the jury and the judgment of sentence entered thereon prior to the passage of the Indeterminate Sentence Act. They are controlled by the general parole law of 1910, which is a distinct and separate Act from the Indeterminate Sentence Act passed in the same year. Smith's punishment was fixed by a jury at confinement in the penitentiary for 21 years, and that term cannot be shortened by parole, unless he brings himself within the general parole law of 1910. The Indeterminte Sentence Act of 1910 has no application to his case.

In view of the fact that under the Act of 1888 as well as under the Act of 1900 the power and authority was given the board to grant a parole in its discretion, and in view of the further fact that by the Act of 1912 the Legislature has indicated a clear purpose to continue this dis-

cretion in the board, we are constrained to hold that prisoners who were convicted for crimes committed before the Indeterminate Sentence Act was passed, and whose punishment was fixed by the verdict of the jury and the judgment of the court under the laws then in force, are not entitled to a parole as a matter of right, and that each application for parole by such prisoners may be granted or refused by the board in its discretion.

If, as appears by the record, the appellee is suffering with tuberculosis, it may be proper that he should be paroled, not only for the protection of his health but for the protection of the other prisoners, although he has been once before convicted of felony, as under the Act of 1910 the board is given authority to grant a parole, although there has been a previous conviction of felony. This, however, is a matter resting in the sound discretion of the board which cannot be controlled by mandamus.

Judgment reversed and cause remanded for a judgment as above indicated.