## Board of Prison Commissioners v. De Moss.

(Decided February 6, 1914).

## Appeal from Franklin Circuit Court.

1. Convicts—When Not Entitled to Discharge—Erroneous Judgment—Not Subject to Collateral Attack.—A convict is not entitled to be released from confinement and finally discharged from the penitentiary because of his trial and conviction under the Indeterminate Sentence Law for a crime committed by him before its passage. Although he should have been tried under the law in force when the crime was committed, and the judgment of conviction under the law subsequently passed was erroneous and, on appeal, would have been reversed, it is not void. A judgment of conviction in a criminal case, when merely erroneous or voidable, like that in a civil case, is, until vacated or reversed, conclusive of what it decides, neither being subject to collateral attack.

2. Convicts—Parole—Under Indeterminate Sentence Law—When Convict Entitled to as Matter of Right.—While one convicted

under the Indeterminate Sentence Law must undergo, by confinement and labor in the penitentiary, the minimum term of punishment, prescribed by the law and the judgment of conviction, for his offense; the law deprives the Board of Penitentiary Commissioners of arbitrary power to refuse him a parole, when applied for, after the expiration of the minimum period of confinement; provided, he has, as defined in section 2 of the act, while in confinement, for nine months next preceding the date of his parole, conformed his conduct to the rules and regulations adopted by the board for the government of the convicts. It being the object of the statute to hold out every inducement to the convict to earn his release and restoration to society by good conduct, if, while serving the minimum term of imprisonment, he is "obedient to the rules and regulations of the institution for at least nine consecutive months next preceding the date of his parole;" he becomes entitled to the parole as a matter of right, and the Board of Penitentiary Commissioners cannot refuse it.

3.  Convicts—Parole—Indeterminate Sentence Law—Reformatory as well as Punitive.—The Indeterminate Sentence Law contemplates the reformation as well as the punishment of the criminal; and to withhold from him, after the expiration of the minimum period of punishment and he has shown himself entitled thereto, the parole allowed as a reward for exemplary conduct during his imprisonment and as a means of completing his reformation while at liberty under the parole, would thwart the primary object of the law.

4.  Convicts—Authority of Board of Prison Commissioners to Parole Convicts—Not a Violation of Constitution—Distinction Between Parole and Pardon.—A pardon is an act of grace proceeding from the chief executive of the State, which exempts the individual on whom it is bestowed from the punishment the law inflicts for the crime he has committed, and releases him from all the disabilities consequent on his conviction. Authority to pardon is conferred by section 77, constitution, on the Governor alone. A parole is a form of conditional release from imprisonment by which the convict is released before the expiration of his term, to remain subject, during the remainder thereof, to supervision by the public authority and to return to imprisonment on violation of the conditions of the parole. The paroled convict is not, therefore, exempt from the entire punishment which the law inflicts for his crime; he remains under the surveillance and subject to the control of the Board of Penitentiary Commissioners until the maximum limit of the term for which he was imprisoned is reached, and for any violation of the conditions of the parole of which he may be guilty while on parole, he may, by order of the Board of Penitentiary Commissioners, be rearrested and reimprisoned in the penitentiary until the expiration of the full term fixed by the law and judgment of the court for his imprisonment therein, without receiving any credit for the time between the date of the parole and that of his reimprisonment. The authority to parole conferred upon the Board of Penitentiary Commis-

sioners by the Indeterminate Sentence Law is but an exercise of the power of discipline possessed by the State, which the legislative department of the government may confide to an instrumentality such as the Board of Prison Commissioners.

5.   Convicts—Paroled Convicts—Board of Penitentiary Commissioners not Authorized to Discharge.—The authority attempted to be conferred by sections 2 and 8 Indeterminate Sentence Law, on the Board of Penitentiary Commissioners to finally discharge paroled convicts is violative of section 77, Constitution, as such a discharge is equivalent to a pardon, which, that section provides, can be granted by the Governor alone.

6.   Convicts—Under Life Sentence—How Board of Prison Commissioners to Parole.—Convicts whose punishment has been fixed, not under the Indeterminate Sentence Law, but by verdict of a jury, at confinement in the penitentiary for life, may, after undergoing five years of such confinement and by good conduct establishing their right thereto, be paroled by the Board of Penitentiary Commissioners. But the authority of the board to parole in such case is conferred by the former parole laws of 1888 and 1900, which allow the board a broad discretion by virtue or which it may grant or refuse the parole.

JAMES GARNETT, Attorney General, O. S. HOGAN, Assistant Attorney General for appellant.

O'REAR & WILLLAMS and WESLEY M. RARDIN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming on original and cross-appeal.

The appellee, John De Moss, an inmate of the penitentiary under the Indeterminate Sentence law, resulting from his conviction of a felony, by his petition filed in the Franklin Circuit Court against the appellants, Henry Lawrence, Daniel E. O'Sullivan and Milton Conley, as individuals, and also as members composing the State Board of Penitentiary Commissioners, asked in the first paragraph thereof that the court compel them by the writ of mandamus, to parole him; and in the second paragraph that it compel them to finally discharge him.

In the first paragraph it is, in substance, alleged that appellee, on or about October 29, 1910, was tried in the Campbell Circuit Court under an indictment charging him with murder, but by verdict of the jury he was found guilty of voluntary manslaughter; by virtue of which and the judgment of the court entered thereon, he was ordered to be sent to and confined in the penitentiary, at hard labor, for a period of not less than two nor more than twenty-one years; following which conviction, he

was so confined in the penitentiary for more than two years next before the institution of this action and is yet confined therein. That during the entire time of his, more than two years, confinement in the penitentiary, appellee gave strict obedience to all the rules and regulations of the institution and no charges of misconduct were brought against him; but that, notwithstanding the foregoing facts, which were well known to appellants, when appellee, after two years' confinement at hard labor in the penitentiary and thereby receiving the minimum punishment imposed by law and the judgment in his case, applied to them for a parole, they arbitrarily and illegally refused to grant the same.

In the second paragraph of the petition it is, in substance, alleged that the crime for which appellee was convicted was committed May 15, 1909, and prior to the enactment of the statute known as the "Indeterminate Sentence Law," notwithstanding which, he was tried and convicted under that statute. That he should have been tried and, if found guilty, sentenced and punished under the law in force at the time of the commission of the crime of which he was convicted; that the judgment, under and by virtue of which he was convicted and confined in the penitentiary, and is yet confined therein, was and is void, for which reason he is entitled, regardless of the parole law, to a judgment of the court directing appellants to release him from further confinement in the penitentiary and finally discharge him.

A demurrer was filed by appellants to the petition and each paragraph thereof, but the circuit court overruled it as to the first paragraph and sustained it as to the second. Appellants excepted to the overruling of its demurrer to the first paragraph of the petition and refused to plead further, whereupon judgment was entered by the court declaring appellee entitled to the parole demanded and awarding the mandamus compelling appellants to grant it. From that judgment the latter have appealed; and appellee, being dissatisfied with the action of the court in sustaining appellants' demurrer to the second paragraph of the petition, has taken a cross appeal from so much of the judgment as manifests that ruling.

We will first dispose of the question presented by the cross-appeal. It will be observed that the second paragraph of the petition rests appellee's alleged right to the

unconditional discharge from the penitentiary, therein prayed, on the single ground that, as the crime for which he was indicted was committed before the enactment of the Indeterminate Sentence Law, his trial and conviction under that law were unauthorized and illegal and that the judgment entered in pursuance thereof was and is void. If appellee is right in this contention it would necessarily follow that his confinement in the penitentiary has been and is without warrant of law. But we do not regard the contention sound. As, for the purposes of the demurrer, the averment of the petition that the crime for which appellee was convicted was committed prior to the enactment of the Indeterminate Sentence Law, should be taken as true, it must be conceded that he ought to have been tried and convicted under the statute in force at the time of the commission of the crime, which required the jury to fix the punishment of the criminal, as well as determine the question of his guilt or innocence. Indeed, it will further be conceded, that the circuit court, in permitting appellee to be tried and convicted under the Indeterminate Sentence Law, committed an error that would, had an appeal been taken by appellee, have compelled the reversal of the judgment of conviction. We so held in the case of Stewart v. Commonwealth, 141 Ky., 522; and again in Dial v. Commonwealth, 142 Ky., 32; both opinions being based on section 465, Kentucky Statutes. In each of these cases the accused was convicted under the Indeterminate Sentence Law for an offense committed before its enactment. But appellee, unfortunately for the contention now urged, did not appeal from the judgment of conviction in his case. Though erroneous, the judgment is not void. A judgment of conviction in a criminal case when merely erroneous or voidable, like that in a civil case, is, until vacated or reversed, conclusive of what it decides, neither being subject to collateral attack. Underwood v. Commonwealth, 32 R., 32; Buchanan v. Henry, Etc., 143 Ky., 628; Elswick v. Matney, 132 Ky., 294.

We think it manifest that appellee is not in a position to complain of his conviction under the Indeterminate Sentence Law, and being concluded by the judgment of conviction his claim of right to an unconditional discharge, set out in the second paragraph of the petition, was properly rejected on demurrer. We do not agree with appellants' counsel, however, that appellee's right

to a parole as claimed in the first paragraph is barred by the opinion in the recent case of Board of Prison Commissioners v. Smith, 155 Ky., 425. In that case it was held that prisoners convicted for crimes committed before the passage of the Indeterminate Sentence Act, and whose punishment was fixed by the verdict of a jury and judgment of the court under the laws then in force, are not entitled to parole as a matter of right after the expiration of the minimum term prescribed by law for the offense for which they were convicted, but can be paroled only at the discretion of the Board of Prison Commissioners. As Smith's conviction took place before the passage of the Indeterminate Sentence Law and his punishment was fixed by a jury, it was held that the question of his right to a parole did not come under the present law, but was controlled by the former parole law which vested in the Board the discretion to grant or refuse the parole. But the case here is different. Appellee asks both a discharge and parole; the first because of his alleged illegal conviction under a law enacted after his commission of the crime, and wrongful confinement in the penitentiary under an alleged void judgment; and the last, if the discharge cannot be granted, on the ground that he is, at any rate, entitled to parole under the law in force at the time of his conviction, because of his having served the minimum term of imprisonment fixed by the judgment of conviction and having conformed his conduct, for the required time, to the rules of the Board of Penitentiary Commissioners. It, therefore, remains to be determined whether he is entitled to the parole.

His right to the parole seems to be resisted by appellants on the grounds: (1) That the parole statute is unconstitutional because it attempts to confer upon the Board of Penitentiary Commissioners powers which belong exclusively to the courts of the State; (2) because it also attempts to confer upon it powers which can be exercised only by the Governor of the State; (3) that if not unconstitutional, the statute confers upon the Board of Penitentiary Commissioners the discretion to grant or refuse the parole, which discretion cannot be interferred with by the courts. All these contentions were overruled in Wilson v. Commonwealth, 141 Ky., 341, and as the reasons given therefor, as well as the authorities supporting them, are fully stated in the opinion, instead of being repeated here, will be supplemented by such

additional reasons and authorities as may be deemed pertinent. The conclusion reached by the court on the principal question considered, viz.: The duty of the board as to the granting of a parole, is stated in the following excerpt from the opinion:

"When the act thus provides that no person shall be eligible to parole except on certain conditions, it necessarily means that those who comply with the conditions shall be eligible to parole. The act, therefore, defines who shall be paroled and does not commit to the commissioners arbitrary power, but imposes on them the duty to parole the prisoners whom the act declares eligible to parole, and this duty the board of prison commissioners may be required in a proper state of case to perform.

"Manifestly the standard fixed by these sections is so unmistakable in meaning and specific in character, as to enable the convict to know what his conduct must be to entitle him to the parole or discharge, and also to enable the board to know what will entitle him to either."

In our view of the matter, it is the manifest purpose of the indeterminate sentence law, to require every person convicted under it, to undergo, by confinement and labor in the penitentiary, the minimum term of punishment prescribed by the law and the judgment of conviction for his offense; and to take away from the Board of Penitentiary Commissioners the arbitrary power to refuse him a parole, if applied for, at the expiration of the minimum period of confinement, provided, he has, as defined in section 2, while in confinement and for nine months next preceding the date of his parole, conformed his conduct to the rules and regulations adopted by the Board for the government of the convicts. In other words, it seems to have been the intention of the legislature to place it within the power of the convict to earn, as a reward for exemplary behavior, his release from prison confinement, after serving the minimum term of imprisonment required by the judgment. The object of the statute, therefore, is to offer and hold out every inducement to the convict to earn his release and restoration to society by good conduct. So, if, while serving the minimum term of imprisonment, he was "obedient to the rules and regulations of the institution, for at least nine consecutive months next preceding the date of his parole," the Board of Penitentiary Commissioners

would be without legal right to refuse to parole him. If, by thus qualifying himself, the convict is eligible to parole, he is entitled to the parole; and if entitled to it, the board is without discretion to withhold it, and cannot arbitrarily refuse it. This construction of section 2 is sustained, not only by its language, but also by that of section 8 of the statute, under which the board claim the power to finally discharge a convict following the granting to him of a parole; which, in terms, declares that "nothing in this act shall be construed as entitling such paroled prisoner to such final discharge except at the discretion of said board." If it had not been the legislative intent to give the convict, as a matter of right, his parole, upon his becoming eligible to receive the same, it would, we apprehend, have been left by section 2 wholly to the discretion of the Board of Prison Commissioners, as the power to finally discharge a paroled convict is attempted to be left to their discretion by section 8.

Reading and considering sections 2 and 8 together we conclude that the former compels the Board of Prison Commissioners to grant the convict a parole at the expiration of the minimum term of his imprisonment, provided, he has complied with the requirements as to good conduct therein prescribed; and that the latter attempts to leave the question, whether the paroled convict shall later be finally discharged, to the discretion of the Board of Prison Commissioners. In the matter of the parole the board must, of course, be satisfied from the evidence before it whether the convict is eligible to parole; that is, whether while in confinement and for nine months next preceding the date of his parole, he has conformed his conduct to the rules and regulations of the penitentiary. But when thus shown to be entitled to parole, the board must parole him. If, notwithstanding sufficient proof of the convict's eligibility, the board should refuse him the parole, he may, by petition for a mandamus, filed in the circuit court, obtain its judgment as to whether the evidence before the board of his eligibility was sufficient to authorize the parole; and if the court finds that it was, it should compel the board to grant the parole.

If the language of section 2 of the parole statute could properly be construed to mean that the Board of Penitentiary Commissioners possess the arbitrary power, notwithstanding the convict's eligibility to parole

as declared by law and earned by his good conduct, to refuse to grant the parole, it would in our opinion defeat the object of the law. The act doubtless had its inception in the sentiment now obtaining in the more enlightened countries of this and the old world, that society is in some measure responsible for the wrongdoing of its criminal classes; and this sentiment seems to have settled into the conviction that the harsh punishments hitherto accorded those confined in the penal institutions, should give place to more humane treatment that will have a tendency to reform and make of them useful members of society. In other words, society has apparently awakened to a realization of the necessity of doing something for the uplift rather than the punishment of its fallen members; hence legislation has lent its aid to this object until nearly every law that has been enacted in recent years, couples with every form of punishment for the criminal, some resulting benefit that is calculated to ameliorate his condition and reform his life.

Whether the laws that have been enacted to put into effect these views of the promoters of this class of legislation, will, as claimed, conduce to reform the criminally inclined and thereby lessen crime, or so rob the penitentiary of its terrors as to make confinement therein no longer a disgrace or punishment in the estimation of the evil doer, and thereby tend to enlarge the number of criminals and increase crime, remains to be determined. These, however, are considerations which address themselves to the legislature like other questions of policy or expediency with which they, as the lawmaking body of the State, must deal. They do not concern the courts, further than they may be taken into account by them in construing the statute for the purpose of ascertaining the legislative intent; that is, the object of its enactment. Assuming, as we think we are warranted in doing, that the object of the indeterminate sentence statute, is as much for the reformation, as the punishment, of those who may be convicted under its provsions, it would not be giving it a tortured construction to say that it guarantees to the convict a reward for good behavior. This reward is the parole his exemplary conduct for a designated time earns for him. While the statute inflicts upon the convict deserved punishment for the offense he has committed, it at the same time says to him, if your behavior is such as to conform to the rules of the peniten-

tiary, you shall after a definite period of imprisonment and good behavior, be paroled. It is the meaning of the statute, therefore, that he cannot be refused the parole after his good conduct has earned it. It is not in the discretion of the Board of Penitentiary Commissioners to refuse it, for he is entitled to it as a matter of right. To give section 2 the construction contended for by appellants, would not only remove from the convict the inducement to good behavior indispensably necessary to the securing of the parole; but would also remove from the members of the Board of Penitentiary Commissioners the incentive to resist such influences as might, on the one hand, be brought to bear upon them by the convict's friends to secure the parole, or, on the other hand, by his enemies or others, interested in his continued confinement, to prevent the parole.

In view of the manifest object of the Indeterminate Sentence Law, the amendment to it of March 16, 1912, (Acts 1912, page 653) whereby it was attempted to give the Board of Penitentiary Commissioners greater discretion in the matter of granting or refusing paroles, can no more be said to confer upon the Board of Penitentiary Commissioners the arbitrary power claimed for them, than did the original act. But if the amendment could be said to confer such powers, its provisions would not apply to appellee, whose conviction took place under the original act and before the passage of the amendment.

We do not agree with appellants' counsel that so much of the statute in question as confers upon the Board of Penitentiary Commissioners authority to parole convicts is in conflict with section 77, Constitution, which provides: "He (the Governor) shall have power to remit fines and forfeitures, commute sentences, grant reprieves and pardons. * * *" Webster gives the following definition of the word "pardon": "To absolve from the consequence of a fault or the punishment of crime; to free from penalty." "A pardon is an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the indivdual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." In United States v. Wilson, 7 Peters, 150, the effect of a pardon is thus stated: "A full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from

all the disabilities consequent on his conviction." Commonwealth v. Bush, 2 Duvall, 264; George, Etc., Commissioners v. Lillard, Warden, 106 Ky., 820; Carr v. State, 19 Tex. App., 635. Of the various definitions of the word "parole" to which our attention has been called, we find none better than that given in 29 Cyc., 1562 (F), quoted with approval in appellants' brief: "A parole is a form of conditional pardon, by which the convict is released before the expiration of his term, to remain subject, during the remainder thereof, to supervision by the public authority and to return to imprisonment on violation of the condition of the parole." In George, Etc. vs. Lillard, Warden, supra, in stating the distinction between a pardon and a parole, we said of the latter:

"It can not be said to be a pardon because the prisoner remains subject to the control of the Commissioners of the Sinking Fund, and is subject to be re-arrested, and, when re-arrested, is compelled to remain in the penitentiary without getting any credit for the time between the parole and redelivery to the warden. He is not exempt from the entire punishment which the law inflicts. The Government could at any time pardon him, and thus place it beyond the power of the Commissioners of the Sinking Fund to re-imprison him. It is not a commutation of the sentence, because it is not a change of the punishment of a person who has been condemned into a less severe one. If a man is sentenced to the penitentiary for twenty years and the Governor reduces the time to ten, if a party is sentenced to hang and the Governor changes the penalty to confinement in the penitentiary for life, or if a man was condemned to serve in the penitentiary for a given period and the Governor would say he should serve in the county jail for a shorter term, then we would understand in each case that there had been a commutation of the sentence. Whilst, in the case of a paroled prisoner, he enjoys his liberty outside of the walls of the penitentiary, yet he remains under the sentence to which he has been condemned, and may be reimprisoned at any time, as we have heretofore said."

It is manifest that the Constitution confers upon the Governor alone the power to grant a pardon; but a parole is not a pardon, and there is no provision of the Constitution declaring the legislature incompetent to confer upon the Board of Prison Commissioners authority to grant paroles to prisoners convicted under the in-

determinate sentence law, whose punishment is fixed by the law and sentence of the court. There is, therefore, nothing in its provisions conferring upon the board the power to parole convicts of that class, that violates section 77 of the Constitution. Nor does it, as to such class of convicts, interfere with the functions of the courts by taking from them power to fix or enforce the convict's punishment after the jury determines his guilt. The act, to the extent indicated, is but an exercise of the power of discipline possessed by the State, which it may exercise through the legislative department of the government and confide to an instrumentality such as the Board of Prison Commissioners. The exercise of the power of discipline conferred on the board does not end with the release of the convict by the granting of the parole, but continues until the maximum limit of the term fixed by law and the judgment of the court, as a punishment for the crime of which he is convicted, shall have been reached; for if, after being paroled he violates the terms thereof, he may be taken in custody by the board and again imprisoned until the maximum limit of his term expires.

The authority to finally discharge paroled convicts, atempted to be conferred on the Board of Penitentiary Commissioners by sections 1 and 8 of the act, presents a more serious question. That part of section 1 referred to is as follows:

"And further, the power and authority to finally discharge any such paroled prisoner as shall have been submissive to the laws, obedient to the terms of his parole, upright in his conduct and industrious and sober in his habits for as much as twelve consecutive months while so at large on parole."

Such of the provisions of section 8 as will be found material are as follows:

"When any prisoner imprisoned under an Indeterminate Sentence and paroled under this act shall have faithfully kept and observed the terms of his parole, obeyed the law, remained sober, industrious and honest in his demeanor for the full term of twelve consecutive months while so on parole, the Board of Penitentiary Commissioners shall have power and authority to finally discharge said prisoners from custody, if in its judgment such discharge would be proper; and in event of such final discharge, he shall not be thereafter subject to re-

imprisonment by reason of the conviction under which he was originally committed."

If it should be held that the board have the power to finally discharge a convict, it would be equivalent to declaring that it possesses the power to pardon, under certain conditions, any and all persons convicted of crime and imprisoned in the penitentiaries of the State, which would practically divide the pardoning power between the Governor and the Board of Penitentiary Commissioners. The language of section 8 undoubtedly attempts to invest the board with the power to pardon, but in view of the provisions of section 77, Constitution, which place the pardoning power in the Governor alone, the legislature could not, without violating that section, confer such power upon the Board of Prison Commissioners.

The distinction between a parole and the final discharge of a convict is also well stated in the excerpt quoted from the opinion in George, Etc. v. Lillard, supra. The paroled convict, as before stated, remains, notwithstanding his release from imprisonment, under the control and surveillance of the Board of Prison Commissioners. Being on probation, if he violates the terms of his parole, he may at any time before the expiration of the maximum limit of the term of imprisonment provided by law and the judgment of the court for his offense, be re-arrested by order of the Board and again imprisoned until the maximum limit of the term of imprisonment fixed by law and the judgment in his case is reached, without receiving credit for good conduct during the existence of his parole. But if after being paroled the convict could be discharged by the Board of Prison Commissioners, the discharge would be final; for section 8 provides: "And in event of such final discharge, he shall not be thereafter subject to reimprisonment by reason of the conviction under which he was originally committed." The power thus given the Board of Penitentiary Commissioners is the power to pardon, which can only be exercised by the Governor of the State. The act, therefore, in so far as it attempts to give the Board of Penitentiary Commissioners power to finally discharge a paroled convict, is, in our opinion, unconstitutional.

The State of Illinois has an Indeterminate Sentence Statute much like that of this State. Section 6 of the act provides for the final discharge of paroled convicts by the concurrent action of the warden of the peniten-

tiary, the Prison Board and the Governor of the State. In George v. The People, 167 Ill., 447, the constitutionality of the statute was attacked on numerous grounds; section 6 being especially assailed, not because it conferred on the Warden and Prison Board powers which could only be exercised by the Governor, but on the ground that it conferred on them judicial powers in violation of the Constitution. The constitutionality of the statute was sustained and we quote from the opinion what is said with respect to the provisions of section 6, mainly for the purpose of indicating how the legislature may provide for the final discharge of paroled convicts, and what duties with respect thereto may legally be confided to the Board of Penitentiary Commissioners:

"Under this section of the act, after a prisoner has been on parole not less than six months, and has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, it is made the duty of the warden to give a certificate to that effect to the prison board. There is nothing more in this than a mere recommendation by the warden to the board. In making the recommendation, surely it cannot be said the warden is in the exercise of judicial power. At the next meeting of the board it is the duty of the board to consider the case of the prisoner so presented or recommended, and if the board decides that the prisoner is entitled to a discharge, they shall make a record showing certain facts and their reasons for recommending a discharge. The law does not authorize the board to discharge the prisoner nor do they attempt to enter a discharge. They merely make a record containing a recommendation that a discharge be granted. There can be no exercise of judicial power in this. The record, together with the recommendation, goes to the court before whom the prisoner was tried, and he may, if upon examination he determines that a proper case is made out for his action, enter an order discharging the prisoner. But even under this order the prisoner is not discharged. Before the discharge can become binding and obligatory it must be approved by the Governor. Under such circumstances there is no ground for saying that a prisoner is discharged by the warden of the penitentiary or the prison board. What they do is to recommend, and the prisoner is released, if

released at all, by the act of the court before whom he was convicted or by the act of the Governor. The release is obtained under a judicial order of the court, sanctioned and approved by the order of the Governor of the State."

It is further insisted for appellants that so much of sections 1 and 8 of the parole law as appear to permit the parole, by the Board, of prisoners in the penitentiary under life sentence, whose punishment has been fixed by verdict of a jury and who have been imprisoned five years, invade the province of the courts and thereby violate the Constitution. As appellee does not belong to that class of convicts, this question is not properly before us for decision; but, in view of the fact that the legislature now in session may regard it necessary to amend the law, we will give an expression of our opinion thereon. The power to parole conferred upon the Board of Penitentiary Commissioners by the sections under consideration applies to prisoners convicted of crimes under the Indeterminate Sentence Law, a wholly distinct statute; and as to such prisoners, who have been confined in the penitentiary to the minimum limit of the terms of punishment prescribed by law for their crimes and who otherwise show themselves eligible to parole, the board, as we have previously held, are without discretion to refuse a parole when applied for, for they are of right entitled to it.

But there is yet another class of criminals who do not come within the provisions of the Indeterminate Sentence Law, for their punishment, as well as the question of their guilt, must be determined by a jury. Criminals of this class whose punishment has been fixed by verdict of the jury and judgment of the court at confinement for life, may, after serving five years of their term of imprisonment, and showing their eligibility thereto, be paroled by the Board of Penitentiary Commissioners; but the power to grant the parole in such case is conferred on the board by the former parole laws of 1888 and 1900, which allow the board a broad discretion, by virtue of which it may grant or refuse the parole. We held in Board of Prison Commissioners v. Smith, supra, that the Board yet has the power under the former parole law to grant paroles to prisoners who are not convicted under the Indeterminate Sentence Law.

As, in our opinion, the circuit court did not err in adjudging appellee entitled to the parole asked by him on the grounds set forth in the first paragraph of his petition; or in sustaining the demurrer to the second paragraph of the petition, the judgment is affirmed both on the original and cross appeal. Whole court sitting.

To so much of the opinion as holds that a prisoner convicted under the Indeterminate Sentence Law, who is eligible to parole, is entitled to the parole as a matter of right, Judges Turner and Hannah dissent.