STATE, *ex rel.* GREENE, *v.* RIMMER, WARDEN.
STATE, *ex rel.* SCRUGGS, *v.* SAME.

(*Nashville.*   December Term, 1914.)

1. **PARDON.** Imprisonment.    Parole.    Indeterminate sentence
   law.·

   Under Indeterminate Sentence Law (Acts 1913, ch. 8), providing
     that the board of prison commissioners shall constitute a
     board of parole, and shall have power to cause to be released
     on parole any person sentenced to confinement in the peni-
     tentiary who has served the minimum term provided by law,
     that such convicts while on parole shall remain in the custody
     of the warden, subject to be returned to the penitentiary at
     any time upon violation of the terms of parole, and that in
     considering applications for parole the board shall not enter-
     tain any petition nor hear any argument of any attorney or any
     person unconnected with the penitentiary in favor of or against
     the parole, etc., a prisoner has not the absolute right to be
     released upon parole provided he has a clean conduct record
     while in prison and has served the minimum term for his of-
     fense, since the act invests the board of prison commissioners
     with discretion as to the exercise of the power conferred in
     the interest of public policy.   (*Post, pp.* 317-327.)

   Acts cited and construed:   Acts 1913, ch. 8.

   Cases cited and distinguished:   Board of Prison Commissioners
     v. De Moss, 157 Ky., 289; Woods v. State, 130 Tenn., 100.

   Cases cited and approved:   Wilson v. Commonwealth, 141 Ky.,
     341; Board v. Smith, 155 Ky., 425.

2. **STATUTES.** Construction.    Intention of legislature.    Adop-
   tion of act of another State.

   Although a statute be taken practically *verbatim* from that of
     another State, the interpretation put upon the original statute
     by the courts of its State can have no binding effect upon the

State ex rel. v. Rimmer.

courts of the adopting State in interpreting such act after its enactment in the second State.  (*Post, p. 327.*)

Case cited and approved:  Smith v. Coal Co., 115 Tenn., 552.

3. **PARDON.   Imprisonment.   Parole.   Indeterminate sentence law.**

Under Acts 1913, ch. 52, providing for paroles in case of prisoners sentenced under laws previous to the indeterminate sentence law (Acts 1913, ch. 8), a prisoner by good conduct in prison secures no absolute right to parole by the governor on the recommendation of the board of prison commissioners, since the act vests in such prison commissioners a discretion as to the exercise of their power.  (*Post, pp. 327, 328.*)

Acts cited and construed:  Acts 1913, ch. 52; Acts 1913, ch. 8.

FROM DAVIDSON.

Appeal from the Circuit Court to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court—A. G. RUTHERFORD, Judge.

M. P. ESTES and H. E. PENDLETON, for relator.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE FANCHER delivered the opinion of the Court.

These two cases were instituted in the circuit court of Davidson county.  The Greene case is a petition for writ of *habeas corpus,* whereby Walter M. Greene, a convict of the penitentiary, seeks to obtain his discharge

from the penitentiary on the ground that he had served his minimum term under the indeterminate sentence law (chapter 8, Acts of 1913).

He was convicted at the May term of the criminal court of Davidson county of petit larceny, and was sentenced to serve an indeterminate sentence of from one to five years in the State penitentiary for said crime. He was received at the penitentiary at Nashville, Tenn., in May, 1913. He filed this petition November 28, 1914.

He avers that the defendant Rimmer is now the warden of the State penitentiary, and assumes to have the custody and control of the petitioner; that he has served the minimum sentence as provided by law, and has observed all the rules and regulations formulated by the board of prison commissioners and said warden, as authorized and required by said act; that he has heretofore made application on the blanks prepared by said warden and board of prison commissioners to be paroled under the terms of said act (chapter 8, Acts 1913), said application in every way meeting every requirement and rule required by said act; but that said board and warden have refused to release him on parole as required by the terms of the act, by reason of which he avers that he is unlawfully restrained of his liberty by said warden, and is entitled to be set at liberty by the orders of the court, subject to the terms, conditions, and restrictions prescribed by said act, and to the rules and regulations adopted by said board and warden under the terms of the act.

He avers that the prison officials have no discretion in granting or refusing paroles, but that it is mandatory upon the board of prison commissioners to grant the parole as soon as he has completed his minimum term.

The lower court and the court of civil appeals refused the relief sought, for the reason that the statute gives a discretion in the matter to the board of prison commissioners, and that the court cannot dictate the terms of a parole; also for the reason that the remedy of *habeas corpus* cannot lie—that, if the petitioner has any right, it must be determined upon *mandamus* against the prison board to compel them to act, and until ordered released by the board the warden was bound to detain the prisoner.

In his petition for *certiorari* to this court, the applicant sets forth that the parole law was taken from the statute of Kentucky, and that in the cases of *Wilson* v. *Commonwealth,* 141 Ky., 341, 132 S. W., 557, and *Board* v. *Smith,* 155 Ky., 425, 159 S. W., 960, it was held that the board possessed no discretion in the matter, and that the act is mandatory upon the board to grant the parole as soon as the prisoner has served his minimum term and complied with the requirement of the act.

It is insisted that our statute is practically identical with the Kentucky law, both using the words "shall have the power to parole," and that the legislature of Tennessee, in adopting the law, also adopted the judicial construction placed upon it prior to the passage of our act.

It is insisted that this court, in the case of *Woods* v. *State,* decided at the April term, 1914, at Jackson, 169 S. W., 558, gave an opinion upon the constitutionality of said law, and that the remarks in the opinion pertaining to the question of the discretion of the board are *dictum;* that the court was in error in its construction of the law in that case, and that that construction should now be overruled.

This is a very important question, involving the rights of many hundreds of prisoners, and we have undertaken to give the question the consideration it deserves, and have again considered the holding of the court in the case of *Woods* v. *State.* It must be admitted that the court of Kentucky has taken a different view of this question. The two laws are very similar, though not identical. There is nothing to show that our statute was taken from the act of Kentucky, although in its essential features it is in effect about the same. In *Wilson* v. *Commonwealth,* 141 Ky., 341, 132 S. W., 557, it was held that the act of 1910 of that State gave the prisoner convicted under the indeterminate sentence law of Kentucky a right to the parole after the minimum term of the sentence prescribed by the law had been served, since to hold the prisoner longer in confinement would be making his punishment to that extent depend solely upon the will of the board of prison commissioners, a nonjudicial body. In the case of *Board of Prison Commissioners* v. *De Moss,* 157 Ky., 289, 163 S. W., 183, the holding in the *Wilson* and *Smith Cases* was reviewed. The legislature of

Kentucky in the meantime had passed an amendment to the act, which, upon its face, appears to give the board of prison commissioners a discretion to refuse or grant a parole. This amendment provides that the board of prison commissioners shall consider the application for parole, together with the prisoner's record of deportment in the penitentiary, on the determination of his right to parole or discharge, and upon said record the commissioners may, in their discretion, grant or refuse the application.

It was again held in the *De Moss Case,* upon review of the statute as amended, that after a convict had served his minimum term, if he had complied with the conditions upon which he was entitled to parole, namely, that for nine months previous, while serving the minimum term, he was "obedient to the rules and regulations of the institution," the board or prison commissioners would be without legal right to refuse to parole him, and it was considered that to give the board an arbitrary right to refuse the parole would be to defeat the object of the law, having in view the sentiment now obtaining in the more enlightened countries of this and the Old World, that society is in some measure responsible for the wrongdoing of its criminal classes; such sentiment giving place to more humane treatment that will have a tendency to reform and make them useful members of society. The court in that case passed on the effect of the act of 1912 of the Kentucky legislature, whereby it would seem that there was

an effort of the legislature to make clear that a discretion was given to the board in granting or refusing the parole, but the court said:

"This can no more be said to confer upon the board of penitentiary commissioners the arbitrary power claimed for them than the original act."

These decisions by the Kentucky court are predicated upon the idea that the board of prison commissioners are a nonjudicial body, and that to grant them a discretion in the matter would be in effect to confer upon them judicial powers.

The *De Moss Case* was a petition for *mandamus*, filed against the board to compel it to issue the parole. The petition averred that he had served the minimum term of two years, and during that time he gave strict obedience to all the rules and regulations of the institution, and that no charges of misconduct were brought against him. A demurrer was interposed to this petition raising the question of its sufficiency to grant the prisoner a parole, and upon its being overruled the board refused to plead further, thereby raising the direct question of whether the board possessed any discretion in granting or refusing the application. It was ordered that the prisoner should be paroled as a matter of right, he having complied with the terms of the law.

Judges Turner and Hannah dissented to so much of the opinion as holds that a prisoner convicted under the indeterminate sentence law, who is eligible to parole, is entitled to parole as a matter of right.

In the present case, the petitioner contends that he is entitled to a release on parole as a matter of right, and that no official and no board has any discretion.

This court fully considered the question here presented in the case of *Woods* v. *State,* 169 S. W., 558. That case involved the constitutionality of the indeterminate sentence law, and it was proper, in order to determine the question, to construe the statute. It was held that the powers conferred on the board of prison commissioners are not judicial in their nature, but only administrative; that, while they are required to exercise judgment and discretion, it is essential that such powers be vested in administrative officers, to a limited extent, at least; otherwise, they cannot discharge any of their duties. We quote from that opinion as follows:

"As to the extent of the discretion conferred, the act imposes upon the exercise of the power of the board of prison commissioners to grant a parole the condition that such power shall not be exercised until the prisoner has served the minimum of punishment fixed by law for the crime committed. When this has been accomplished, the discretion to grant the parole arises. On first blush, the discretion seems then unlimited; but it was without doubt in the mind of the legislature that the same principles should control which were laid down in section 4 as conditions for final discharge. That is to say, the board must believe, from the history of the prisoner and his conduct during his service of the minimum term, that during his qualified liberty

under the parole he will probably not violate the law, and generally that his release on parole will not be incompatible with the interests of society. . . .

"Under the present statute the punishment is fixed at a maximum, subject to diminution below that number of years, after the minimum shall have been served, through the operation of certain discretion vested in the board of prison commissioners. But until final discharge the diminution referred to is only a qualified one, since the prisoner is only out on his own recognizance, so to speak, subject to be returned into actual physical confinement at any moment."

After reviewing the Kentucky statute, and the cases above referred to, and again considering the effect of our statute, we are satisfied that the construction placed upon it in the case of *Woods* v. *State,* supra, is a proper one.

The fact that the legislature of Kentucky in 1912 passed an amendment to the Kentucky act of 1910, whereby it seems to make clear that a discretion was granted to the board in the matter of granting applications of this nature, might indicate that the legislature was not satisfied with the construction placed upon the act by the court. However this may be, we are satisfied that it was the intent of the legislature in our act of 1913 to grant to the board of prison commissioners a discretion. This act provides that the board of prison commissioners are constituted a board of parole, and shall have the power to cause to be released on parole any person sentenced to confinement

in the penitentiary who has served the minimum term provided by law for the offense committed by him less good time, provided that no convict serving a life sentence shall be paroled until he has served for twenty-five years; that such convicts, while on parole, shall remain in the lawful custody and under the control of said board, subject to be returned to the penitentiary at any time upon violation of the terms of parole; that geographical limits wholly within the State may be fixed in each case, and the same enlarged or reduced, according to the conduct of the prisoner; that in considering applications for parole, the board shall not entertain any petition, or hear any argument of any attorney or any person not connected with the penitentiary in favor or against the parole or release of any prisoners; but it may institute inquiries by correspondence, by taking testimony, or otherwise, as to the history of physical or mental condition or character of such prisoner.

If we should hold that all convicts must be released under this statute when they have served the minimum term, the worst and most confirmed criminal within the prison will be placed upon the same terms as the unfortunate individual, who, without vicious tendencies, has been tempted to fall. The minimum and maximum terms of imprisonment were originally provided by law so the jury could grade the offense. The indeterminate sentence law has taken from the jury any discretion as to the time of imprisonment, and placed convicts under confinement for an indeterminate peri-

od, not to exceed the maximum heretofore prescribed for a given offense. In place of granting to the jury or the court the duty to foresee the restraining effect of the imprisonment, and to say what period of time will be sufficient to meet the ends of justice, and probably reform the individual, the legislature has wisely provided a system, and placed it in the hands of trained prison officials, who, observing the conduct of the prisoner, may be able to say at what time after the minimum has been served he may be trusted with a limited freedom, and thereafter further observe him and say when he may be considered reliable and trustworthy, so he may be probably released entirely without violating the law, when the board may recommend to the governor that he grant such prisoner a final discharge. It is so apparent that a discretion is here given, in order to meet the beneficent ends desired, that no argument is needed. This court has heretofore held the law constitutional, construing it as herein indicated, and we are entirely satisfied that this is the legislative intent. Nor is the position of petitioner's counsel well taken that he is now entitled to have this court adjudge that he has the right to the mandate of the court that he be paroled as a matter of right, subject to such rules as to the conditions and territorial limits applying to his release as the board of prison commissioners may determine, upon that question being now referred to the board. This position is entirely untenable, in view of the manifest purposes of the act. The prisoner

must be dealt with entirely by the board in determining when he may be entitled to the parole.

We prefer our interpretation of this statute to that of the Kentucky courts, though it be admitted the act was taken from the Kentucky law, which is not entirely apparent.  And conceding that the interpretation by the courts of the State from which our act is taken is entitled to great consideration, there is no binding effect to it.  If it is not in harmony with the purposes and policy of the lawmaking body of the State of its adoption, the judicial construction placed upon the law by the State of its origin will be denied.  *Smith* v. *Coal Co.*, 115 Tenn., 552, 92 S. W., 62, 4 L. R. A. (N. S.), 1180.

Other questions of procedure, etc., need not be considered, as this disposes of the merits of the controversy, and we preferred to deal with the merits of the case, overlooking any technical questions.

It results that the writ of *certiorari* is denied.

The same must be the effect of our holding in the case of Edward Scruggs herein.  He avers that he is a prisoner convicted under the law prior to the passage of the indeterminate sentence law, and seeks to be paroled by virtue of Acts of 1913, ch. 52.  This is a companion act to the indeterminate sentence law (chapter 8, Acts of 1913), and provides for paroles in cases of prisoners sentenced under former laws.  This law is to regulate the paroling of prisoners by the governor on the recommendation of the board of prison commissioners, when such prisoner has served the minimum

State ex rel. v. Rimmer.

term provided by law for the offense committed by him, and his limited freedom is placed under the same restraints and conditions as prisoners paroled under chapter 8 of said Acts. All that has been said herein applies with equal force to this application. The discretion is as clear as that contained in the other act; and for the same reasons this petition is also denied.