## Huggins v. Caldwell, Judge.

(Decided March 9, 1928.)

## Petition for Writ of Mandamus.

1. Criminal Law.—Courts have inherent power for many reasons to suspend sentence, and for some reasons at least to suspend execution of judgment; "suspension of sentence" contemplates only postponment of rendition of judgment, while "suspension of judgment" or "suspension of execution of judgment" contemplate withholding for time of performing by defendant of an already rendered judgment.

2. Pardon.—Acts 1926, c. 154, secs. 1, 2, held to be statute conferring upon circuit court power to parole prisoners therein designated.

3. Pardon.—A "parole" merely excuses prisoner for a season from actually performing judgment or undergoing punishment inflicted upon him, and authority for its granting is in every instance based on disciplinary considerations, while "pardon" wipes out all consequences of judgment of conviction and satisfies it in full, and is matter of grace, and need not be supported by disciplinary or other considerations.

4. Constitutional Law.—Acts 1926, c. 154, secs. 1, 2, in so far as it attempts to confer on circuit court judge authority to parole convicted prisoners, held to violate Constitution, sec. 77, conferring authority on Governor to remit fines and forfeitures, commute sentences, grant reprieves and pardons and sections 27, 28, designating three divisions of powers of government and forbidding one department from exercising power belonging to another, and statute is invalid.

DANIEL W. DAVIES for plaintiff.

L. J. CRAWFORD and L. J. DISKIN for defendant.

OPINION OF THE COURT BY JUDGE THOMAS—Dismissing petition for mandamus.

The defendant, Alfred M. Caldwell, is the judge of the Seventeenth circuit court judicial district, composed entirely of Campbell county. The plaintiff, Arthur Huggins, was indicted in that court charged with feloniously assaulting another with intent to rob. Upon his trial thereunder he was convicted of assault and battery and imprisoned in the county jail for two years. After he had served a portion of the sentence which, added to his jail confinement awaiting the action of the grand jury that indicted him, amounted to an aggregate period of more than twelve consecutive months, he made appli-

cation to defendant as presiding judge of that court to suspend his sentence, or parole him, pursuant to the imposed mandatory duty created by chapter 154, Acts of 1926, p. 717. He declined to do so, and plaintiff filed this original action in this court for a mandatory order compelling him to sustain the motion and grant the relief therein requested. Defendant has filed in this court both a special and general demurrer to the petition, and without waiving either he filed his answer, which is a denial. An agreed stipulation of facts sustaining the allegations of the petition as to the extent of plaintiff's confinement was filed and the cause was then submitted.

A preliminary question is argued by counsel for defendant, and which is: That a proper interpretation of the statute (conceding its legality) requires the continuous confinement of a prisoner to be had as a result of his sentence, and that his confinement under an order of an examining court to await the action of the grand jury may not be taken into consideration and cannot augment the confinement under his sentence so as to complete the period for which the parole provided for by the statute may or shall be granted. But, because of the conclusions we have reached, as hereinafter expressed, upon the validity of the statute, it will not be necessary to determine that question.

In order to a proper understanding of the questions presented, and hereinafter discussed, we have concluded at the expense of some space to insert herein sections 1 and 2 of the involved act which are the only relevant ones in the case. Omitting title and enacting clause those sections read:

"Section one. It shall be unlawful for any circuit judge, police judge, or justice of the peace of this commonwealth to enter any order in the court over which such officer presides suspending any judgment or part thereof in favor of the commonwealth in a misdemeanor case or staying the execution thereof after such judgment shall have become final.

"Sec. two. It shall be unlawful for any officer for any county, district, or city of this commonwealth to release from any county jail of any county in the commonwealth any prisoner who has been placed in such jail under a final judgment of a court rendered in favor of the commonwealth of Kentucky prior to

the day such judgment shall have been satisfied, unless such judgment has been appealed from and superseded, or paid, or replevied, or unless such prisoner so confined in such jail shall have been pardoned by the Governor of this commonwealth or released on a judgment under a writ of habeas corpus. Provided, however, any regular circuit judge of this commonwealth may, during term time or during vacation, enter an order on the records of the circuit court clerk of any county in which such judge presides, by which order such circuit judge may suspend any fine or jail sentence of any prisoner convicted of a misdemeanor or misdemeanors and then confined in the jail if the circuit judge is of the opinion from affidavits filed or testimony taken that the life of the prisoner or the life of any other prisoner confined in such jail is endangered by reason of the physical condition of the prisoner to be paroled, or whenever such prisoner so confined upon conviction of a misdemeanor has been confined in said jail for a period of six or more consecutive months on one or more jail sentences or upon a fine or fines assessed in a misdemeanor case or cases or by reason of failure of such prisoner so confined to execute a peace bond or bonds in misdemeanor cases by reason of judgments entered in said circuit court in favor of the commonwealth or by reason of judgments entered by the judge of the county or the police court or any magistrate's court of such county in favor of the commonwealth. The order, when so entered shall state the reason therefor and shall operate as a parole to the prisoner so confined in the county jail and such parole shall be during the good behavior of the prisoner so paroled, and when a certified copy of such order is delivered to the jailer of the county in which said prisoner is confined the jailer shall immediately release said prisoner. The suspension and the fine and imprisonment and the granting of paroles may be revoked by the circuit judge granting same or by his successor in office at any time within twelve months after same has been granted and it shall be the duty of each circuit judge of this commonwealth to suspend fine and imprisonment and grant a parole to any prisoner who has been confined in any county jail in his district for

a period of twelve consecutive months upon a charge or upon a conviction of a misdemeanor or misdemeanors and such suspension and parole may be revoked at any time within twelve months after same has been granted. No appeal can be taken from any order of the circuit court judge suspending a fine or imprisonment and granting a parole as herein provided."

Before taking up the consideration of those sections, it might be well to observe that the law, as adjudged by the courts and written by the authors, draws a distinction between what is referred to as "a suspension of sentence," "a suspension of judgment," and "a parole." From the same sources we find much discussion as to the inherent power of courts to exercise either of the first two named powers, but we will not incumber this opinion with a discussion thereof, since in this case the power that plaintiff seeks to compel the defendant to exercise is attempted to be conferred by the act supra. It might not be amiss, however, to say that there is a wide distinction between a "suspension of sentence" and "a suspension of judgment," which is the same as "a suspension of the execution of the judgment." The first one contemplates only a postponement of the rendition of judgment, while the latter two (which in effect are the same) contemplate a withholding for a time of the performance by defendant of an already rendered judgment, and it is thoroughly established that courts have inherent power for many reasons to suspend the sentence, and for some reasons, at least, to suspend the execution of the judgment; one illustration of which is, to enable defendant to prepare his case for an appeal and in some offenses where defendant was a female and was pregnant. Other reasons exist, but, as stated, we will not go into a discussion of them.

It is confidently argued by counsel for plaintiff that the inserted sections of the act, supra, do not provide for a parole by the circuit judge, since it contains language indicating that the attempted authority to be conferred on him is a suspension of the sentence or execution of the judgment and not a parole of the prisoner. But the language as so construed by counsel is used in section 2, supra, with reference to the releasing of the prisoner from the jail in order to protect his life

because of some physical ailment or the life of other prisoners therein. In addition to such conferred authority, it will be observed that the act also empowers the judge of the circuit court, of his own volition and without any suggested standard upon which to base his action, to enter an order on his records either in term time or in vacation releasing the prisoner from the custody of the jailer and setting him at large, and which he may do whether the confinement was upon a judgment rendered in his court or one rendered by a county judge, a justice of the peace, or a police judge, or all of them combined, and he may likewise enter such order when the confinement of the prisoner in the jail has been for a continuous period of as much as six months when it, or a part of it, was because of a failure of defendant to execute a peace bond or bonds in a misdemeanor case, and which were required to be executed by either the circuit judge entering the order or by any of the inferior officers above named. So that, the act not only attempts to confer the authority, whatever it may be termed, on the circuit judge with reference to his own orders and judgments, but likewise with reference to those of the inferior courts named, and, to say the least of it, it is extremely doubtful if the authority attempted to be conferred with reference to the judgments and orders of such inferior courts can be upheld as valid. But we will not attempt a discussion of that question because of our conclusions subsequently stated, and because that precise question is not here.

The title of the act is itself confusing. It starts out by saying:

"An act making it unlawful for and authorizing regular circuit judges of this commonwealth to suspend fines and jail sentences and to parol prisoners thereunder or county court or police court or justice of the peace to suspend any judgment or any part thereof, in a misdemeanor case," etc.

The first section of the act absolutely and without qualification says that "it shall be unlawful for any circuit judge, police judge, or justice of the peace of this commonwealth to enter any order . . . suspending any judgment or part thereof" in misdemeanor cases. That section does not expressly, nor by implication, withhold

such power from a county judge as presiding officer of the quarterly court, and if such officer possessed any of the powers referred to in the act before its enactment, there is nothing in any of its terms modifying or in any wise qualifying such prior existing authority, and he can continue to exercise it in such respects as was theretofore possessed by him, regardless of the enactment of the statute. The second section of the act, which appears to be wholly independent of its first one, attempts to confer the powers therein enumerated exclusively upon the circuit judge, to be exercised under the facts and conditions already referred to, i. e., first, for the benefit of the prisoner or his fellow prisoners, and, second, when the prisoner has been confined in the county jail for a continuous period for as much as six months under a misdemeanor judgment or judgments, or a failure to execute a peace bond or bonds under orders from either the circuit judge or those of a county judge, a justice of the peace, or a police judge. The effect of such an order by the circuit judge is constantly referred to throughout the act as a ''parole'' and which, as we have seen, is also the designation of the authority as contained in the title to the act. For instance, we read in section 2 that the order releasing the prisoner after six months' continuous confinement ''shall operate as a *parole* to the prisoner . . . and such *parole* shall be during the good behavior of the prisoner so paroled. . . . The suspension and the fine and imprisonment and the granting of *paroles* may be revoked by the circuit judge granting same or by his successor in office at any time within twelve months after same has been granted.'' (Our emphasis.) In the latter part of that section it is made the mandatory duty of the circuit judge to grant such parole ''to any prisoner who has been confined in any county jail in his district (regardless of what court or courts put him there) for a period of twelve consecutive months. . . . And such suspension and parole may be revoked at any time within twelve months after same has been granted.'' It is then provided that no appeal may be taken from any order of a circuit judge ''granting a parole as herein provided.''

A classic writer stated a well-known truth when he said, ''That which we call a rose by any other name would smell as sweet.'' Its application is that it is not so much the expressed name that determines the actual

classification, but it is the substance of the thing that points to its true designation. Therefore, if the word "parole" was nowhere mentioned in the act under consideration, the substance and effect of the authorized order by the circuit judge was to parole the prisoner of his (circuit judge) own incarceration, or the incarceration by any of the designated inferior judicial officers, for any of the named causes. But, as we have seen, the statute expressly provides that the authorized order by the circuit judge "shall operate as a parole," and it is thereafter referred to as a parole, and to the prisoner as "so paroled." Under such circumstances it would be a mere play upon words to say that the act did not confer upon the circuit judge the power of parole when his order entered pursuant thereto is designated as a parole and the prisoner is designated as a paroled prisoner. We therefore conclude that the statute, at least that portion of it applicable to the facts here presented, is one conferring upon a circuit judge the power to parole the prisoners therein designated and we shall so treat it in this opinion.

The validity of our parole statute, as now contained in article II, chapter 97, of our present statutes, was first before this court in the case of George, etc., Commissioners v. Lillard, 106 Ky. 820, 51 S. W. 793, 1011, 21 Ky. Law Rep. 483. Later cases discussing and upholding its validity are Wilson v. Commonwealth, 141 Ky. 341, 132 S. W. 557; Board of Prison Commissioners v. Smith, 155 Ky. 425, 159 S. W. 960; Board of Prison Commissioners v. DeMoss, 157 Ky. 289, 163 S. W. 183; Gordon v. Gordon's Adm'r, 168 Ky. 409, 182 S. W. 220, L. R. A. 1916D 576, Ann. Cas. 1917D 886; and Commonwealth v. Minor, 195 Ky. 103, 241 S. W. 856. It was contended in the first case (George, etc., v. Lillard) that the power of the Legislature to confer the right to parole prisoners upon administrative officers violated the provisions of section 77 of our Constitution, which vests in the Governor the "power to remit fines and forfeitures, commute sentences, grant reprieves and pardons." It was held in that opinion that a parole was not a pardon, and the distinction between the two was clearly pointed out. That conclusion was eminently correct, since there is a wide distinction between a parole and a pardon. The one merely excuses the prisoner, for a season, from ac-

tually performing the judgment or undergoing the punishment inflicted upon him, and the authority for its granting is in every instance based upon disciplinary considerations. It is so provided in our statute; and in some if not all of the domestic opinions referred to the fact is stressed that the power is disciplinary and dependent upon the rules and regulations of the prison authorities, adopted in order to promote upright and orderly conduct on the part of the prisoner, and it was broadly intimated that without such considerations, or others equally worthy, the Legislature might not have authority to confer such power, even on an administrative board.

A pardon wipes out all consequences of the judgment of conviction and satisfies it in full. It is a matter of grace and need be supported by no disciplinary or other considerations. It removes any disabilities consequent upon the conviction and is, therefore, altogether different from a parole, which has no satisfying effect on the judgment, and does not relieve the prisoner of any disability resulting from his conviction. It is therefore clear, we repeat, that the Lillard opinion was correct in its declarations differentiating a parole from a pardon.

But the constitutional provision as emphatically vests in the Governor the power and authority to grant reprieves as it does to grant pardons or to commute sentences. The dissenting opinion in the Lillard case clearly points out that a "parole" is but another name for a "reprieve," since the latter is "the withdrawing of a sentence for an interval of time, which operates in delay of execution," which is the definition given by Mr. Bouvier and Mr. Blackstone as well as Mr. Webster. A parole would seem to have no other effect, and it is to be regretted that the majority opinion in the Lillard case absolutely refrained from any effort to differentiate a parole from a reprieve, the granting of the latter of which, as we have seen, is as mandatorily and exclusively vested in the Governor as is the authority to pardon. No one, we presume, would contend that the Legislature could confer upon the court, or any ministerial or executive officer, the right and authority to commute sentences or to pardon prisoners, since such a statute would violate the provisions of sections 27 and 28 of our Constitution, the first of which designates the

three divisions of the powers of government, i. e., legislative, executive, and judicial; and the latter forbids any person or collection of persons of one of those departments from exercising any power properly 'belonging to either of the others, except in certain instances not applicable to this case. See Sibert v. Garrett, 197 Ky. 17, 246 S. W. 455, and cases and authorities therein referred to. But the authority and power to grant a reprieve by the Governor is no more limited by section 77 of the Constitution than is his power and authority to grant pardons or commutation of sentences, and which observation, it would seem, is quite persuasive of the correctness of the dissenting opinion in the Lillard case, were the question one of first impression. See Snodgrass v. State of Texas, 67 Tex. Cr. R. 615, 150 S. W. 162, 41 L. R. A. (N. S.) 1144, and Fuller v. State (Miss.) 57 So. 6, 39 L. R. A. (N. S.) 242. But it is our conclusion that a due regard for the doctrine of stare decisis compels us to adhere to the majority opinion in the Lillard case and the adhering ones following it.

However, that opinion expressly held that, "The parole law is not an interference with the judicial functions of the court, but it is the exercise of the power of discipline which the state possesses, to be exercised through the legislative department of the government," and it was determined that the Legislature might delegate such disciplinary power to an administrative board. The succeeding opinions go no further, since in neither of them was the question of the right of the Legislature to confer the power of parole on a member of the judicial department presented or considered. Strangely enough, in the Lillard case it was contended that the parole there under consideration was invalid because not granted by the court, which contention was upon the theory there advanced, that the granting of it was a judicial function and could not be delegated to another department of the state government. The court, as we have seen, held directly to the contrary, and said that the granting of the parole was not the exercise of a judicial function. The other cited domestic cases following that one contain nothing to the contrary.

The case of Brabandt v. Commonwealth, 157 Ky. 130, 162 S. W. 786, had under consideration, not the suspension of judgment, but the suspension of the sentence

after judgment. The prisoner in that case was convicted of committing the offense of petty larceny and punished by confinement in the county jail for twelve months. After rendering the judgment, and upon motion of the defendant with the consent of the commonwealth's attorney, the court suspended the execution of the judgment "after the expiration of thirty days' punishment" (confinement in the county jail), and inasmuch as the defendant had already been incarcerated in jail more than 30 days before the trial, he was immediately discharged during good behavior. The question involved was the validity of that order, and we held that—

"All of the order entered June 13th, 1911, except that part which overruled the motion for a new trial, is void. The court had no authority to enter an order suspending the further execution of the sentence imposed. When the motion for a new trial was overruled, and the judgment was entered upon the verdict, that was a final order. . . . The order suspending the further execution of the sentence imposed, was not merely erroneous; it was an act beyond and without the jurisdiction of the court; an attempted exercise of a power, *not judicial,* but *wholly executive* in its nature; and such order should not have been obeyed by the jailer. . . . When he (the jailer) receives into his custody a prisoner under a final order of court, any order or direction of said court or any other court, or of any officer, other than the Governor, attempting to *suspend* the further execution of that judgment, being void and of no effect, should not be obeyed by him. The practice of suspending judgments of courts in misdemeanor cases, is a failure to enforce the law; it encourages crime, and is a menace to good government." (Our emphasis, except as to the word "suspend," which is emphasized in the opinion.)

If, according to the principles announced in that case, the power to "suspend the execution of judgments" is a nonjudicial one, and is one "wholly executive," a fortiori could the same with equal accuracy be said with reference to the power to parole. But, it might be said that the action of the judge there under consideration did not purport to be exercised under au-

thority attempted to be conferred by a statute, and that the legislative act now under consideration supplied the deficiencies found and commented upon in that case.. In reply, we refer to the Sibert case, supra, and the authorities therein referred to wherein we held that it was incompetent for the Legislature to confer functions strictly appertaining to one of the three divisional departments of the state government upon either of the others. That being true, and applying the same reasoning adopted in that opinion, we are constrained to hold that in so far as the act under consideration attempted to confer upon the circuit judge the authority to parole convicted prisoners it violated the sections of the Constitution supra and is invalid.

Having arrived at that conclusion, it becomes unnecessary for us to discuss or determine other objections to the validity of the statute, among which might be mentioned that it prescribes no guiding standard (see the Wilson case, supra) to govern the action of the circuit judge in granting the parole after the prisoner has served as much as six months, except the one relating to his physical condition and that of his fellow prisoners. Moreover, under the working of the statute it is in the power of the circuit judge to eventually pardon the prisoner, since, it will be obsevred, that he only has the authority to revoke his parole at any time within twelve months after it was granted or entered, and necessarily he has no such power after the expiration of that time; the effect of which would be to entirely release the prisoner from serving the remaining portion of his sentence, if there was no such revocation.

Our conclusions, therefore, are that the demurrer to the petition should be and it is sustained and the petition is dismissed. Whole court sitting.