## Lovelace v. Commonwealth.

Feb. 4, 1941.

328

E. B. Rose, Leebern Allen, C. E. Tyree and Beverly P. White for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Maynard Lovelace, a deputy sheriff of Lee County, killed Jake Brandenburg while endeavoring to arrest him on November 21, 1936. The next ensuing grand jury declined to return an indictment against Lovelace. A subsequent grand jury indicted him and he was convicted thereunder of voluntary manslaughter and sentenced to five years' imprisonment. We reversed the judgment because there had been no order re-submitting the case to the grand jury. Lovelace v. Commonwealth, 272 Ky. 52, 113 S. W. (2d) 853. Thereafter the circuit judge was of opinion that the court had lost control of the case and was without authority to re-submit it. We certified the law to be that it did have such power. Commonwealth v. Lovelace, 276 Ky. 796, 125 S. W. (2d) 730. Later an indictment was duly returned and the defendant was convicted under it of voluntary manslaughter and sentenced to two years' imprisonment. He appeals from that judgment.

Having a warrant of arrest to serve upon a certain man, Lovelace went to a saloon conducted by Joe Stamper near the railroad station in Beattyville. It was a small room in which 25 or 30 men were gathered. The deceased, Jake Brandenburg, was drunk and boisterous. According to Edward Couch and Bernie Fox, the deceased had not been disorderly and the officer without justification of any sort proceeded to assault and then shoot Brandenburg deliberately while he was standing with his arms at his side and offering no resistance. Not only is their testimony contradicted by all the other many witnesses, but their reputation for truth and veracity was proven to be bad. Their testimony is not worthy of credence. Other witnesses presented by the commonwealth testified in substance that the officer had told the deceased that he was under arrest because he was drunk; that he had insisted that he was not so drunk as to need being arrested; and asked to be permitted to go home with his brother, whom he was expecting soon, and then that the officer grabbed and began striking him with his pistol. Brandenburg was not armed and endeavored only to ward off the blows and did not strike the officer at all. In the melee both went down to the floor and Lovelace then shot Brandenburg, the bullet entering his cheek and coming out the top of his head.

The defendant testified that the deceased was drunk, cursing and disorderly and had refused to quiet down upon the requests of the proprietor of the saloon and himself. Brandenburg persisted in his disorderliness and boasted that Lovelace would not take him anywhere. The officer told him he was under arrest and took hold of him with the request that he "come on." Brandenburg pulled loose and struck the officer with his fist two or three times, and, according to Lovelace, only when he ran his hand to his pocket did he strike him with his pistol. Then Brandenburg grabbed a bottle and struck Lovelace over the head with it. He had him down almost on his knees holding him when Lovelace fired his pistol. While he was down with Jake Brandenburg hitting him, Lovelace was struck from behind by John Brandenburg, a brother of the deceased. While the defendant's testimony as to just when this occurred is not clear, that of other witnesses indicates that it was before he shot Jake Brandenburg. The evidence that the deceased struck Lovelace over the head with a beer

bottle is overwhelming. Several witnesses made a stronger case of self-defense and justification than did the defendant himself. It is agreed by all that immediately after the shooting John Brandenburg attacked Lovelace with a metal stool as he was leaving the building.

A number of witnesses testified that the deceased was a strong man and violent when drinking, and that the defendant is a man of good reputation and standing. While the evidence presented by the commonwealth was sufficient to take the case to the jury, it is difficult to understand how any fair-minded jury could have accepted it and disregarded the preponderating evidence proving that the officer was justified in what he did.

The court confined the self-defense instruction to the right to defend against the attack and assault of the deceased only. We are of opinion that the evidence justified the inclusion of the accused's right to defend himself against both the deceased and his brother, John Brandenburg, and that the omission is a prejudicial error.

The instruction submitting the right of the defendant as a peace officer follows that approved in Keeton v. Commonwealth, 108 S. W. 315, 32 Ky. Law Rep. 1164, published as Section 878 of Stanley's Instructions to Juries. We do not think that form applicable to this state of facts, for in that case the officer was only trying to stop boisterous conduct, while here there was a clear case of an arrest for public drunkenness and breach of the peace, committed in the officer's presence, and a forcible resistance after arrest. Giles v. Commonwealth, 266 Ky. 475, 99 S. W. (2d) 455. Applicable to the facts in relation to the officer's right to shoot and kill the deceased is the instruction prepared in Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284, 30 Ky. Law Rep. 290 (published as Instruction No. 2 in Section 879, Stanley's Instructions to Juries), and suggested as a pattern in Ayers v. Commonwealth, 108 S. W. 320, 32 Ky. Law Rep. 1234, and Hatfield v. Commonwealth, 248 Ky. 573, 59 S. W. (2d) 540. See also Mays v. Commonwealth, 266 Ky. 691, 99 S. W. (2d) 801, and Taylor v. Commonwealth, 274 Ky. 702, 120 S. W. (2d) 228

The defendant seasonably filed a petition asking that the circuit court postpone entering the judgment

and sentencing him and that he be placed on probation in accordance with the provisions of Section 979b-5 et seq., Statutes. The court adjudged that statute to be unconstitutional and denied the petition. The defendant excepted to the ruling and submits that it is erroneous. Since the court did not deny probation in the exercise of the discretion which the statute vests in him but did so upon the ground that the law is void, the question is before us for decision. The constitutionality of the act has not hitherto been questioned but we have recognized and given it effect. Darden v. Commonwealth, 277 Ky. 75, 125 S. W. (2d) 1031; Blusinsky v. Commonwealth, 284 Ky. 395, 144 S. W. (2d) 1038.

The statute is an act of 1936 (Chapter 30) and was proposed by the Judicial Council. Section 1126a-1 et seq., Statutes. The first section, which is the pivotal one, is as follows:

"Any Circuit Court of this Commonwealth, subject to the provisions and conditions hereinafter provided, may postpone the entering of judgment and the imposing of sentence and probate any person arraigned before it charged with crime. The court shall have no power to postpone the entering of judgment or the imposing of sentence on any person who has been found guilty by verdict of the jury and whose punishment is fixed by the jury at life imprisonment or death. Except in the cases next hereinabove provided, the aforesaid courts, after a plea of guilty or after the returning of a verdict of guilty by the jury, may postpone the entering of judgment and the sentencing of such defendant and place the defendant on probation, or may impose a fine and also place the defendant on probation."

Section 2 provides for an investigation and report to the court by a probation officer of the "circumstances of the offense, criminal record, social history and present condition of defendant," and, whenever practicable, of physical and mental examinations of the defendant.

Section 3 of the Act is as follows:

"The court shall determine and may at any time modify the conditions of probation and may include among them the following, or any other: That the probationer shall: (a) avoid injurious or vicious habits; (b) avoid persons or places of disreputable

or harmful character; (c) report to the probation officer as directed; (d) permit the probation officer to visit him at his home or elsewhere; (e) work faithfully at suitable employments as far as possible; (f) remain within a specified place; (g) pay a fine in one or several sums as directed by the court; (h) make reparation or restitution to the aggrieved party for the damage or loss caused by his offense; in an amount to be determined by the court; (i) support his dependents."

Section 4 is, in part, as follows:

"The period of probation or postponement of rendition of judgment shall be determined by the court and may be continued or extended. Upon the satisfactory fulfillment of the conditions of probation or postponement of rendition of judgment, the courts shall by order duly entered discharge the defendant. At any time during the period of probation or postponement of judgment, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or postponement or rendition of judgment."

The section provides for the arrest of the defendant for violating the conditions of his probation, and the character of report to be made to the court; and continues:

"Thereupon the court, after a hearing, may revoke the probation or postponement of rendition of judgment and shall proceed to deal with the case as if there had been no probation or postponement of rendition of judgment."

Other sections of the act provide for the appointment of probation officers by the State Department of Welfare as may be required for service in the circuit courts, and relate to their powers and duties.

It is elementary that every reasonable presumption of constitutionality of an act of the legislature is to be indulged; also that in the absence of constitutional restraint the legislature is omnipotent in dealing with matters of legislation and the courts with matters of a judicial nature. The question here is whether the legislature in enacting the statute has granted and the courts in acting under it are exercising power confided in the

executive. Like the constitutions of other states, the Constitution of Kentucky (Section 77) vests in the Governor the "power to remit fines and forfeitures, commute sentences, grant reprieves and pardons," excepting in cases of treason. Section 109 merely declares the judicial power to be vested in the courts established by the constitution (excepting the Senate as a court of impeachment) and does not undertake to define that power nor prescribe its execution, excepting certain matters unrelated to the present question.

Justification for probating and paroling offenders of the law has no place here. But it is not amiss to observe that experience has proved the wisdom of probating and paroling offenders and fully justifies the well-nigh universal establishment of the practice in modern penal systems. We pass over the several statutes and cases dealing with the parole of convicts confined in the penitentiary.

The nature or character of the action of the court vested by the legislature by the statute involved is indicated by its name,—probation. Probation relates to action taken before the prison door is closed—before final conviction, while parole relates to action taken after the door has been closed. A parole partakes of the nature of a pardon, for it suspends the execution of a penalty already imposed. Commonwealth v. Polsgrove, 231 Ky. 750, 22 S. W. (2d) 126; Adkins v. Commonwealth, 232 Ky. 312, 23 S. W. (2d) 277. The word "probation" in its association with criminal procedure has been in use only since 1878, and is defined as:

> "A system of dealing (chiefly) with young persons found guilty of crimes of lesser gravity, and especially the first offenders, wherein these, instead of being sent to prison or otherwise punished, are released on suspended sentence during good behavior, and placed under the supervision of a probation officer, who acts as a friend and advisor, but who, in case of the failure of the probationer to fulfill the terms of his probation, can report him back to the court for the execution of the sentence originally imposed." The Oxford English Dictionary.

Therefore, we approach the consideration of the question bearing in mind the distinction between probation

before final adjudication of guilt and the power to pardon, reprieve or parole.

There is conflict in the opinions of other courts on the constitutionality of statutes conferring discretionary power to suspend sentences indefinitely, but the majority view is that such legislative acts are constitutional—a distinction sometimes being drawn between the power to suspend the imposing of a sentence and the power to suspend the execution of a sentence. 15 Am. Jur., Criminal Law, Sections 479, 480, 494, 499; Annotations, 26 A. L. R. 399; 101 A. L. R. 1402. Under the statutes of some states the sentence of a defendant is distinct and independent of the judgment, but in ordinary criminal legal parlance, judgment and sentence have the same meaning. 16 C. J. 1266. Under our procedure, pronouncing judgment is sentencing the prisoner (Criminal Code of Practice, Section 283 et seq.) although it is a common practice to enter the judgment on the order book and later to have the defendant brought into court and sentenced formally. Section 285, Criminal Code of Practice.

In Brabandt v. Commonwealth, 157 Ky. 130, 162 S. W. 786, 787, the question of the inherent power of a court to suspend the further execution of a judgment and sentence already imposed upon a misdemeanant was presented. We held that there is no such inherent power, being of opinion that when the judgment had become final and the defendant had been committed to jail the attempt to release him by the court was the "exercise of power, not judicial, but wholly executive in its nature," hence that the order of court was void. The denial of the power of the court to suspend a final judgment and direct a jailer to release a prisoner for a limited period because of ill health was reaffirmed in Woodcock v. Richey, 225 Ky. 318, 8 S. W. (2d) 389.

The authority of the legislature to confer the power of probation on the circuit courts has been considered heretofore. The General Assembly of 1926 enacted a bill which, after declaring it unlawful for a circuit judge to suspend any judgment or part thereof in a misdemeanor case, provided that such a judge might suspend any sentence that had been imposed on a misdemeanant, and stated that such an order "shall operate as a parole." Acts 1926, c. 154. The act clearly undertook to

grant to the courts the power to parole prisoners, and since a parole is but an indefinite reprieve, which is defined as "the withdrawing of a sentence for an interval of time, which operates in delay of execution," it was an inevitable conclusion that the act trespassed upon the powers of the Governor; hence was unconstitutional. Huggins v. Caldwell, 223 Ky. 468, 3 S. W. (2d) 1101, 1104.

There is a clear distinction between the act of 1926 and the act of 1936 we are now considering. The present statute authorizes the postponement of the rendition and entry of a final judgment upon a verdict, or its equivalent when the judge may impose the penalty, and then authorizes the judge, in his discretion, to place the defendant on probation pending such rendition and entry. There is a material difference in the status of a defendant following the verdict of guilt and his status after a final judgment has been entered and sentence pronounced. The verdict is but the basis of the judgment and is not effective until there is a judgment. Its return and acceptance by the court are but interlocutory steps toward final disposition, for it may be set aside and judgment thereon arrested if the judge be of opinion, in the exercise of a judicial discretion, that it ought to be. We have had occasion to regard the status of the defendant during the interval and the absence of entry of the judgment. Thus, disqualification of a person as a witness who has been "convicted" of perjury, or of a voter upon "conviction" of a felony is held not to attach until and unless there is a final judgment pronounced upon the verdict. Dial v. Commonwealth, 142 Ky. 32, 133 S. W. 976; Prewitt v. Wilson, 242 Ky. 231, 46 S. W. (2d) 90. The term of a person convicted of crime does not begin before the rendition of final judgment. Commonwealth v. Gresham, 198 Ky. 451, 248 S. W. 1038. So it is that though a defendant's motion for a new trial be overruled he cannot prosecute an appeal from a conviction without a judgment, and, if a judgment be entered at a later term of court, it is effective as of the date of its entry and the time allowed by the law for perfecting an appeal is calculated from that date. Davis v. Commonwealth, 230 Ky. 589, 20 S. W. (2d) 455. There are many other decisions to the same effect, namely, that prosecution in the trial court is not final until there is a judgment entered of record. And

it is not necessary that the judgment be rendered at the same time. Dilley v. Commonwealth, 243 Ky. 464, 48 S. W. (2d) 1070. If justifiable cause exists or delay is authorized by statute, an indefinite postponement of sentence does not deprive the court of jurisdiction. Annotations, 3 A. L. R. 1004; 97 A. L. R. 802.

The legislature makes the laws that declare what are criminal offenses and define the processes by which these laws are enforced. Having the power to make, it has the power to modify and provide for abatement or suspension. The Criminal Code of Practice, Section 283, declares that upon a verdict of conviction in cases of felony, the court shall not pronounce judgment until two days after it is rendered unless the court be about to adjourn for the term. This antedates the present constitution. If the legislature may constitutionally require two days, it may permit a longer period.

We need not here inquire into the extent to which the power to suspend the rendition and entry of a judgment inheres in the court as a judicial function (see 15 Am. Jur., Criminal Law, Sections 479, 480) or how far other statutes should be construed as requiring the rendition of judgment in a reasonable time after the verdict. Whatever the extent of those directions and limitations may be, the power in the legislature to authorize the courts to suspend those laws is in the logically implied affirmation contained in Section 15 of the Constitution of Kentucky, declaring "No power to suspend laws shall be exercised, unless by the general assembly or its authority." By this act of 1936 (Section 979b-5 et seq., Statutes), the General Assembly has exercised that constitutional power and has authorized the courts to suspend the implications of the law which require entry and pronouncement of judgment without unreasonable delay. This law becomes a part of the statutory procedure and processes. We may point out that the legislature has exercised the same power in relation to the administration of the statute declaring it to be a felony for a parent to desert and leave his child destitute by providing that the circuit court may suspend the prosecution during good behavior or care of his child, and has control over a judgment rendered upon a verdict of conviction for a period of five years. Sections 331i-1, 331i-2, Statutes. Likewise, in the provision for suspending judgment where the court has reasonable grounds to be-

lieve a convicted person is insane (Section 287, Criminal Code of Practice) and suspending the execution of a criminal condemned to death because of insanity or pregnancy. Section 1137-8, Statutes; Section 296, Criminal Code of Practice.

We are of opinion Section 979b-5 et seq. of the Statutes is constitutional.

For the errors in the instructions, the judgment is reversed.