**Roma Gene PRATER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2000–SC–0279–DG.

Supreme Court of Kentucky.

Aug. 22, 2002.

As Amended Sept. 24, 2002.

Joseph Ray Myers, Karen Maurer, Assistant Public Advocates, Department of Public Advocacy, Frankfort, for Appellant.

Gail Robinson, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Kentucky Association of Criminal Defense Lawyers, Amicus Curiae.

A.B. Chandler, III, Attorney General, John E. Zak, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellee.

KELLER, Justice.

## I. INTRODUCTION

We granted discretionary review to consider whether KRS 439.575, which establishes a "prerelease probation program," violates the Kentucky Constitutional provisions mandating separation of powers among the branches of government. We conclude that KRS 439.575 impermissibly confers the executive power of parole upon the judiciary, and we therefore affirm the decision of the Court of Appeals declaring KRS 439.575 unconstitutional.

## II. FACTUAL BACKGROUND

The 1998 Kentucky General Assembly enacted a statute authorizing Kentucky's circuit courts to grant "probation" to inmates incarcerated in Kentucky's prison system.[1] That statute, codified at KRS 439.575, provides:

(1) There is hereby created a program for prerelease probation of inmates confined in correctional facilities under the jurisdiction of or under contract to the Department of Corrections.

(2) Any inmate who is in a prerelease program or eligible for a prerelease program as specified by administrative regulations of the Department of Corrections may apply to the sentencing court for a prerelease probation.

(3) The court, upon favorable recommendation of the Department of Corrections, may place the inmate on probation under those terms and conditions as the court deems necessary, which may include but need not be limited to those specified in KRS 533.030.

(4) In particular, the court may require that an inmate placed on prerelease probation remain in a half-way house approved by the Department of Corrections and that the probationer pay the cost of his or her lodging in

---

1. 1998 Ky. Acts, ch. 606, § 119, effective July 15, 1998.

the half-way house and the costs of probation supervision in accordance with applicable statutes for probation supervision and persons granted work release from jail.

(5) An inmate placed on prerelease probation shall no longer be considered as an inmate of the Department of Corrections but shall be considered as a defendant placed on probation, subject to supervision by the Division of Probation and Parole, or other agency approved by the court, and the orders of the court.

(6) A person placed on prerelease probation by the court who violates the conditions of his or her probation may be dealt with by the court in the same manner as any other person who violates the conditions of probation.

(7) The period of probation under this section shall not exceed the maximum expiration date of the inmate applying for the probation.[2]

On October 14, 1998, Appellant, who was then serving a felony prison sentence, filed a motion in the Graves Circuit Court asking the court to consider him for prerelease probation under KRS 439.575. The trial court denied the motion in a written order entered on October 29, 1998:

On September 20, 1993, this Court sentenced the Defendant to a term of incarceration of two years on the charge of Escape, 2nd Degree, to run consecutive with a ten year sentence in Indictment No. 92–CR–086 for the offense of Kidnapping. This matter is now before the Court on pro se motion of the Defendant for Pre–Release Probation pursuant to [legislation] passed by the 1998 Legislature.

This Court finds that the motion does not contain any certification by the Department of Corrections that the Defendant is eligible for or participating in any pre-release program as specified by the administrative regulations of the Department of Corrections. The Court further finds that this Statute vests in the Trial Court the executive function of parole, which is a clear violation of separation [of powers] in violation of Sections 27, 28, 69, and 109 of the Kentucky Constitution and, as such, is unconstitutional. For the foregoing reasons, this Court **DENIES** the Defendant's Motion for Pre–Release Probation.

Appellant sought review of the trial court's ruling in the Court of Appeals. The Court of Appeals did not address the issue of whether Appellant had satisfied the statutory requirements of KRS 439.575, but affirmed the Graves Circuit Court's ruling on the grounds that KRS 439.575 is unconstitutional because it "plainly, simply, and impermissibly gives parole power to the trial courts."

This Court granted Appellant's motion for discretionary review in which Appellant asked us to determine whether the Court of Appeals erred when it held KRS 439.575 unconstitutional. The Commonwealth did not file a cross motion for discretionary review[3] asking us to consider Appellant's compliance with KRS 439.575's procedures (the issue not addressed by the Court of Appeals), and thus the sole issue before the Court[4] concerns the constitutionality

---

2. KRS 439.575.

3. CR 76.21.

4. *See Commonwealth Transp. Cabinet Dep't of Highways v. Taub,* Ky., 766 S.W.2d 49, 51–52 (1988); *Green River Dist. Health Dep't v. Wigginton,* Ky., 764 S.W.2d 475, 479 (1989) ("[T]he prevailing party in the Court of Appeals must follow [the CR 76.21] procedure if he wishes our Court to further review other issues in addition to those raised in the Mo-

of KRS 439.575. We agree with the Court of Appeals and the Graves Circuit Court that KRS 439.575 is unconstitutional because it violates the separation of powers doctrine.

## III. ANALYSIS

█ Sections 27 and 28 of the Kentucky Constitution explicitly require separation of powers between the branches of government:

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them are to be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.[5]
>
> No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.[6]

Each of the Commonwealth's three (3) prior Constitutions began with provisions—virtually identical to Sections 27 and 28—that were designed to separate the powers of government and prevent concentrations of power.[7] Today, Section 27 and 28 immediately follow the Kentucky Bill of Rights. Appropriately, this Court has described Sections 27 and 28 as embodying the "cardinal principle of our republican form of government"[8] and one that is among the most "emphatically cherished and guarded"[9] principles in our Constitution.

Since the adoption of the current Constitution, Kentucky courts have found unconstitutional the judiciary's exercise of functions exclusive to the legislative[10] or executive[11] branches of government. Ac-

tion for Discretionary review.") *overruled on other grounds, Withers v. University of Kentucky,* Ky., 939 S.W.2d 340 (1997).

5. KY. CONST. § 27.

6. KY. CONST. § 28.

7. *See Legislative Research Commission v. Brown,* Ky., 664 S.W.2d 907, 911 (1984) (hereinafter *"LRC v. Brown "*); *Sibert v. Garrett,* 197 Ky. 17, 246 S.W. 455, 458 (1922); *Pratt v. Breckinridge,* 112 Ky. 1, 65 S.W. 136, 138 (1901) (quoting *Langenberg v. Decker,* 131 Ind. 471, 31 N.E. 190, 193 (1892)) ("[T]he observance of this division is essential to the maintenance of a republican form of government.")

8. *Bloemer v. Turner,* 281 Ky. 832, 137 S.W.2d 387, 390 (1940). *See also Legislative Research Commission v. Brown, supra* note 7 at 912 ("[T]he separation of powers is fundamental to Kentucky's tripartite system of government....."); *Turner v. Kentucky Bar Association,* Ky., 980 S.W.2d 560, 562 (1998) ("Section 28 forcefully articulates the bedrock separation of powers principle....").

9. *Arnett v. Meredith,* 275 Ky. 223, 121 S.W.2d 36, 38 (1938). *See also Akers v. Baldwin,* Ky.,

736 S.W.2d 294, 309 (1987) ("The separation of powers between the three equal branches of government is one of the most important facets of our Kentucky Constitution."); *In re Appointment of the Clerk of the Court of Appeals,* Ky., 297 S.W.2d 764, 767 (1957) ("The doctrine of the separation of governmental powers ... runs like a golden thread throughout the fabric of our government.").

10. *See Commonwealth v. Addams,* 95 Ky. 588, 26 S.W. 581 (1894) (legislation requiring Court of Appeals to fix compensation for deputy clerks of the then Court of Appeals), *overruled in part, Stone v. Wilson,* 19 Ky.L.Rptr. 126, 39 S.W. 49 (1897); *American Beauty Homes Corp. v. Louisville and Jefferson Co. Planning and Zoning Commission,* Ky., 379 S.W.2d 450 (1964) (statute requiring de novo circuit court trial on appeal from zoning change application); *Fawbush v. Bond,* Ky., 613 S.W.2d 414 (1981) (court unconstitutionally exercised legislative power in establishing boundaries for electoral purposes).

11. *See Brabandt v. Commonwealth,* 157 Ky. 130, 162 S.W. 786, 787 (1914) (order purporting to suspend further execution of criminal sentence after defendant was committed to

cordingly, the issue presented in this appeal is whether KRS 439.575 permits members of the Judicial branch to perform an executive function—specifically, the power to parole inmates. To further narrow the issue on appeal, we observe that neither party disputes the well-recognized conclusion that the power to grant parole is a purely executive function.[12] Instead, in a noteworthy alignment of advocacy, both Appellant and the Commonwealth emphasize the language of KRS 439.575 and urge this Court to find the statute constitutional because it grants sentencing courts the power to grant *probation*, not parole. While both parties stress the fact that KRS 439.575 refers to prerelease "probation," our predecessor court poetically rejected the suggestion that the General Assembly's characterization of a power resolves questions as to the nature of that power:

> A classic writer stated a well-known truth when he said, "That which we call a rose by any other name would smell as sweet." Its application is that it is not so much the expressed name that determines the actual classification, but it is the substance of the thing that points to its true designation. Therefore, if the word "parole" was nowhere mentioned in the act under consideration ... it would be a mere play upon words to say that the act did not confer upon the circuit judge the power of parole....[13]

Thus, we examine the substance of the power that KRS 439.575 grants to sentencing courts to determine the nature of that authority, and, as we find it indistinguishable from the executive power to grant parole, we hold that KRS 439.575 violates Kentucky's constitutional separation of powers provisions.

On several occasions, the appellate courts of Kentucky have addressed issues relating to the constitutional authority of the judicial and executive branches to suspend a defendant's sentence through probation or parole. In most of these cases,

custody of jailer "was an act beyond and without the jurisdiction of the court, an attempted exercise of a power, not judicial, but wholly executive in nature[.]"); *Huggins v. Caldwell*, 223 Ky. 468, 3 S.W.2d 1101 (1928) (statute authorizing circuit court judges to parole persons serving misdemeanor sentences); *Woodcock v. Richey*, 225 Ky. 318, 8 S.W.2d 389 (1928) (addressing another provision of same statute addressed in *Huggins v. Caldwell, supra*); *Clark v. Ardery*, 310 Ky. 836, 222 S.W.2d 602 (1949) (court's attempt to purge voter rosters constituted unconstitutional exercise of executive power); *Commonwealth v. Partin*, Ky.App., 702 S.W.2d 51 (1986) (district court orders concerning the placement of children committed to CHR custody constituted unconstitutional exercise of executive power); *Crouch v. Police Merit Board*, Ky., 773 S.W.2d 461 (1989) (de novo review of case involving discharge of public employee violates separation of powers); *Vaughn v. Knopf*, Ky., 895 S.W.2d 566 (1995) (statute requiring chief circuit judge to approve executive branch budget).

12. *Commonwealth v. Cornelius*, Ky.App., 606 S.W.2d 172, 174 (1980) ("It has been settled for many years that the decision as to whether a person serving a sentence of imprisonment should be paroled is an executive function, not a judicial one, and that legislation conferring upon officers of the judiciary the authority to exercise such a function violates ... our Constitution and is void."); *Peck v. Conder*, Ky., 540 S.W.2d 10, 12 (1976); *Murphy v. Cranfill*, Ky., 416 S.W.2d 363, 365 (1967); *Morris v. Commonwealth*, Ky., 268 S.W.2d 427, 428 (1954) ("The sentencing of prisoners convicted of crime and the parole of prisoners from confinement are separate and distinct functions of government. The first is a judicial function; the latter is a prerogative of the executive department."); *Huggins v. Caldwell, supra* note 11 at 1105 ("[I]n so far as the act under consideration attempted to confer upon the circuit judge the authority to parole convicted prisoners it violated ... the Constitution and is invalid.").

13. *Huggins v. Caldwell, supra* note 11 at 1103.

however, the courts distinguished between the concepts of "probation" and "parole" in the context of a sentencing process somewhat different in form, but not substance, from the one now employed under the Kentucky Penal Code. Prior to the effective date of the Penal Code, "there were two ways in which redetermination of the actual length of imprisonment could occur" [14] after a jury established the maximum term for which a defendant could be imprisoned:

> One of the two involved a trial judge's power of probation of a convicted offender. That power, as defined in KRS 439.260(1), allowed a judge to postpone imposition of sentence, to probate an offender, and to impose upon him reasonable conditions to be performed. If any of these conditions were violated, the court could revoke probation. Following such revocation, the court could reinstate the original sentence that was imposed by the jury or could do something different. The statute said that the court "[could] impose any sentence which might have been imposed at the time of the conviction." ....
>
> The second way in which a redetermination of the initial imprisonment term could occur under prior law involved the power of parole. Under the former

sentencing process, if the power of probation was not exercised, a convicted offender was turned over to the department of corrections for no longer than the maximum term fixed by the jury. The power to determine the period of incarceration passed at this point to the parole board. [15]

■ Thus, although we now find trial courts imposing "sentences of probation" in final judgments, [16] until the Penal Code was adopted, "the method of probating a person convicted of a criminal offense [was] by postponing entry of the final judgment and sentence upon the verdict." [17] Under certain circumstances— e.g., when the trial court entered judgment, but withheld imposition of sentence—the trial court could place a defendant on probation following an appeal of the conviction. [18] Additionally, as long as the trial court retained jurisdiction over the judgment—i.e., during the same term of court [19] or, if in a court of continuous session, for a period of sixty (60) days as authorized by a statute in effect at that time [20]—a trial court could change its mind and place a defendant on probation by setting aside a prior judgment imposing sentence and postponing the entry of judgment. [21] However, once a trial court's

14. KRS 532.060, Official Commentary (Banks/Baldwin 1974).

15. *Id.*

16. *See* KRS 532.040.

17. *Taylor v. Asher*, Ky., 317 S.W.2d 895, 896 (1958). *See* 1956 Ky. Acts, ch. 101, §§ 2–6, *amended by* 1962 Ky. Acts ch. 234, § 47, *repealed by* 1974 Ky. Acts, ch. 406, § 336, effective January 1, 1975. *See also Lovelace v. Commonwealth*, 285 Ky. 326, 147 S.W.2d 1029 (1941); *Commonwealth v. Fanelli*, Ky., 445 S.W.2d 126 (1969).

18. *Commonwealth v. Fanelli, supra* note 17 at 127.

19. *See South Mountain Coal v. Rowland*, 204 Ky. 820, 265 S.W. 320, 321 (1924) ("The power of the court to set aside a judgment entered by it at the same term is inherent, ... broad and comprehensive, and its exercise is not hampered by the ordinary rules of procedure.").

20. *See Bax v. Fletcher*, Ky., 261 S.W.2d 662, 663 (1953).

21. *Commonwealth v. Kazee*, Ky., 252 S.W.2d 20, 21 (1952) ("[A]fter the judgment of January 17, 1951 had been set aside, the court had full power and right under [the statute authorizing probation] to suspend the rendition of judgment in this case, and release Kazee on

judgment imposing sentence became final, the trial court had no authority to suspend further execution of the defendant's sentence and an attempt to do so was held "an attempted exercise of a power, not judicial, but wholly executive in nature." [22] Historically, therefore, Kentucky courts have perceived a "material difference in the status of a defendant following the verdict of guilt and his status after a final judgment has been entered and sentence pronounced," [23] and have conceptualized "probation" as the suspension of the *imposition* of a sentence while, after imposition, "parole" suspends *execution* of a sentence:

> The nature or character of the action of the court vested by the legislature by the statute involved is indicated by its name—probation. Probation relates to action taken before the prison door is closed—before final conviction, while parole relates to action taken after the door has been closed. A parole ... suspends the execution of a penalty already imposed. The word "probation" in its association with criminal procedure has been in use only since 1878.... Therefore, we approach the consideration of the question bearing in mind the

distinction between probation before final adjudication of guilt and the power to pardon, reprieve or parole.[24]

Kentucky courts have utilized the pre-judgment character of probation and the post-judgment character of parole to address constitutional issues concerning authority assigned to the executive and judicial branches. For instance, turn-of-the-century parole and indeterminate sentencing legislation was found not to infringe upon the authority of the judiciary because "[a] judgment inflicting punishment ... is not rendered uncertain or indefinite because the prisoner may be paroled or discharged by the [parole] board before the maximum limit of imprisonment is reached." [25] Additionally, at various times, the General Assembly has attempted to grant governmental actors the authority to parole misdemeanants serving time in county jail facilities, and Kentucky Courts have: (1) found unconstitutional a 1926 Act purporting to give that authority to circuit courts; [26] (2) found a later legislative act assigning that authority to county judges (an executive office) constitutionally permissible; [27] and (3) demonstrated consis-

---

probation."); *Bax v. Fletcher, supra* note 20 at 664 ("But, under the statute then in force, Judge Ropke did have authority within the 60–day period ... to set aside the judgment and then place Fletcher on probation.").

**22.** *Brabandt v. Commonwealth, supra* note 11 at 787.

**23.** *Lovelace v. Commonwealth, supra* note 17 at 1034.

**24.** *Id.* at 1033.

**25.** *Wilson v. Commowealth,* 141 Ky. 341, 132 S.W. 557, 562 (1910). *See also George v. Lillard,* 106 Ky. 820, 51 S.W. 793 (1899); *Board of Prison Com'rs v. De Moss,* 157 Ky. 289, 163 S.W. 183, 187 (1914).

**26.** *Huggins v. Caldwell, supra* note 12 at 1105:

> If, ... the power to "suspend the execution of judgments" is a nonjudicial one, and is one "wholly executive," a fortiori could the same with equal accuracy be said with reference to the power to parole.... We are constrained to hold that in so far as the act under consideration attempted to confer upon the circuit judge the authority to parole convicted prisoners it violated the ... Constitution and is invalid.

*Id. See also Woodcock v. Richey, supra* note 11.

**27.** *Murphy v. Cranfill, supra* note 12 at 365 ("Clearly, the county judge could be authorized to perform an executive or administrative function, and the legislature could properly delegate to him, as it delegates to the Parole Board under KRS 439.330, the power of granting parole."); *Peck v. Conder, supra* note 12 at 12:

tency by again finding a separation of powers violation when the General Assembly made a second attempt to assign that authority to the circuit courts.[28]

Although the sentencing provisions of the Kentucky Penal Code now permit trial courts to enter a judgment sentencing a defendant to a *sentence of probation* without the procedural hurdles required under preexisting law, the pre-judgment and post-judgment distinction remains because "[t]he actual length of [a defendant's] sentence is determined by the parole board as was done under the pre-existing process." [29]

Appellant argues, however, that KRS 439.575 is constitutional under the holding of *Commonwealth v. Williamson*,[30] in which the Court found that a previous incarnation of Kentucky's "shock probation" statute [31] did not infringe upon the governor's constitutional authority to grant pardons.[32] At that time, KRS 439.265 provided:

(1) Subject to the provisions of KRS Chapter 439, any county or circuit court may, *upon motion of the defendant made not earlier than thirty days nor later than sixty days* after the defendant has been delivered to the keeper of the institution to which he has been sentenced, suspend the further execution of the sentence and place the defendant on probation

under such terms as the court determines. The court which tried the defendant may also suspend the sentence and place the defendant upon its own motion, made within the same thirty day period.

(2) The court shall consider any motion filed in accordance with subsection 1 of this section within sixty days of the filing date of that motion, and shall enter its ruling within ten days after considering the motion. The defendant may, in the discretion of the trial court, have the right to a hearing on any motion he may file, or have filed for him, that would suspend further execution of sentence. Any court order granting or denying a motion to suspend further execution of sentence is not reviewable.

(3) The authority granted in this section shall be exercised by the judge who imposed sentence on the defendant, unless he is unable to act and it appears that his inability to act should continue beyond the expiration of the term of the court. In such case, the judge who imposed sentence shall assign a judge to dispose of a motion filed under this section, or as prescribed by the rules and practices concerning the respon-

[W]hen a person has been convicted of a crime and has begun to serve his sentence the function and authority of the trial court is finished. What then happens to the prisoner is entirely in the bailiwick of the executive branch of government, and is no business of the courts, including the trial court. In granting parole the county judge acts in an executive capacity, not a judicial capacity.
*Id.*

**28.** *Commonwealth v. Cornelius, supra* note 12 at 174 ("Since the decision of whether a person serving a sentence of imprisonment should be paroled is an executive function, KRS 439.177, which vests the judiciary with the right to make such a decision is unconstitutional and void.").

**29.** KRS 532.060, Official Commentary (Banks/Baldwin 1974).

**30.** Ky., 492 S.W.2d 874 (1973).

**31.** KRS 439.265.

**32.** Ky. Const. § 77.

sibility for disposition of criminal matters.[33]

Reasoning from its prior holdings, in *Commonwealth v. Kazee* and *Bax v. Fletcher*, that a court with jurisdiction to reconsider its judgment could place a defendant on probation after initially sentencing him to a term of imprisonment, the *Williamson* court found the statute constitutional:

Prior to the adoption of the Rules of Civil Procedure and the Rules of Criminal Procedure, when by statute circuit courts having terms had control over their judgments during the term in which they were rendered, and circuit courts of continuous session had control over their judgments for 60 days, it was held, in *Bax v. Fletcher*, that a circuit court of continuous session, at any time within the 60–day period for which it retained control of its judgments, could set aside a judgment of conviction of crime and grant probation, notwithstanding that the defendant already had commenced serving the sentence.

The holding in *Bax v. Fletcher* was in substance that the action of a court, during the statutory period for which it retained control over its judgments, in setting aside a judgment of conviction of crime and granting probation, was not an invasion of or encroachment upon the executive power of clemency.

It is our opinion that the 1972 Act here in question reasonably may be considered as establishing a period, not unreasonably long, during which the court retains a limited control over its judg-

ments in criminal cases. The Act says in substance that until the expiration of the period allowed for probating the sentence it is not final as regards commitment. We see in this no substantial difference in principle from the complete 60–day control held valid in *Bax v. Fletcher*. [Another] case[ ] supporting the same principle [is] *Commonwealth v. Kazee. . . .*

The 1972 Act seems to have a worthy purpose of providing in effect for a 30–to–60 day observation period to be served before the sentencing court is required to reach a final decision as to the granting of probation. We see nothing unconstitutional in giving the courts that kind of limited control over their judgments.

Our specific holding is that the Act does not invade or encroach upon the executive power.[34]

In subsequent decisions, the Court has clarified that: (1) the authority granted by the shock probation statute is limited by the time constraints outlined in the statute;[35] and (2) KRS 439.265 does not grant a trial court "continuing jurisdiction" over all matters relating to a prior judgment, and instead grants jurisdiction "only for the limited purpose of considering shock probation."[36] For all other matters, if no appeal is taken from a judgment, the trial court loses jurisdiction to alter, amend or vacate the judgment ten (10) days after its entry.[37]

While the parties to this appeal argue that KRS 439.575 is constitutional under the *Williamson* holding, we find that argu-

**33.** 1972 Ky. Acts. ch. 169, effective June 16, 1972 (emphasis added).

**34.** *Commonwealth v. Williamson, supra* note 30 at 875 (citations omitted).

**35.** *Commonwealth ex rel. Hancock v. Melton,* Ky., 510 S.W.2d 250 (1974).

**36.** *Commonwealth v. Gross,* Ky., 936 S.W.2d 85, 87 (1997).

**37.** *Id.* ("All other types of amendments or modifications are subject to the limitations of CR 59.05 and CR 60.02."); *Silverburg v. Commonwealth,* Ky., 587 S.W.2d 241, 244 (1979).

ment unpersuasive because we believe that to so hold would require us to disregard both the reasoning employed and the authority relied upon by the *Williamson* court. While the Act before the *Williamson* court granted trial courts "limited control over their judgments" by establishing a "not unreasonably long" period—analogous to that available under prior law and procedure—to reach a final decision regarding probation, KRS 439.575 purports to grant trial courts the authority to make "probation" decisions regarding inmates they have sentenced to prison at any point during their period of incarceration—presumably until their final discharge from custody.[38] Thus, KRS 439.575 blurs, if not obliterates, the distinction between "probation" and "parole," and grants trial courts interminable, and therefore "unreasonably long," authority to suspend the execution of a defendant's sentence—in other words, authority that is "entirely in the bailiwick of the executive branch of government."[39]

■ Nor are we persuaded by the argument that the executive branch's "participation" in the trial court's prerelease probation decision in the form of eligibility determinations[40] and/or a mandatory "favorable recommendation from the Department of Corrections,"[41] avoids a separation of powers violation. We have been cited no authority for the proposition that one branch's participation in another branch's constitutionally impermissible exercise of power "squares things" under

Section 28 of the Kentucky Constitution, and we have found none in our own research. To the contrary, we find no ambiguity in the language of Section 28: "No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." No section of the Kentucky Constitution authorizes the judicial branch to exercise executive power if the executive is "along for the ride."

■ Our prior case law addressing the constitutionality of legislative involvement in the executive's appointment authority illustrates that the Section 28 inquiry is relatively simple—a constitutional violation of separation of powers occurs when, and only when, one branch of government exercises power properly belonging to another branch. For instance, in *LRC v. Brown*[42] we held that legislative enactments authorizing the Speaker of the Kentucky House of Representatives, the President Pro Tem of the Senate, and the Legislative Research Commission to make appointments to certain boards and commissions "fly in the face of the principle which declares such appointments cannot be made by the General Assembly itself. Such statutes constitute an incursion by the General Assembly, or in this case, its designees, into the separation of powers doctrine."[43] In both *Elrod v. Willis*[44]

---

**38.** In fact, administrative regulations adopted by the Department of Corrections for the implementation of KRS 439.575 state that Department of Corrections caseworkers will not even review inmates' requests for "favorable recommendations" until after "the passing of the one hundred eighty (180) day shock probation period." Kentucky Corrections Policies and Procedures (KCPP) No. 27–11–02 (effective December 18, 1998).

**39.** *Peck v. Conder, supra* note 12 at 12.

**40.** KRS 439.575(2).

**41.** KRS 439.575(3).

**42.** *Supra* note 7.

**43.** *Id.* at 923.

**44.** 305 Ky. 225, 203 S.W.2d 18 (1947).

and *Kentucky Association of Realtors, Inc. v. Musselman*,[45] however, the courts held that statutes requiring the Governor to make appointments to administrative bodies from lists of persons submitted by third parties with an interest in the composition of those bodies did not unconstitutionally infringe upon the governor's appointment power.[46] In *Musselman*, we explained that the identity of the actor who *actually performs* another branch's assigned functions is critical and that the statutes at issue in *LRC v. Brown* were unconstitutional because of the power those statutes permitted the legislative branch to exercise:

> [T]here is a fundamental and critical difference between the statutes held constitutionally flawed in *LRC v. Brown* and the statutes proved as constitutionally valid in *Elrod v. Willis*.... The statutes in *LRC v. Brown* granted the General Assembly continuing power, either directly through its leadership or indirectly through the LRC (which we recognized was *not* an independent agency but an arm of the legislature), to require the Governor to appoint to specified commissions persons who were nominees of the legislature. This transgressed the mandate in Section 27 of our

Kentucky Constitution that "each" department of government shall "be confined to a separate body of magistracy," and in Sec. 28 that "[n]o ... persons, being of one of those departments, shall exercise any power properly belonging to either of the others." But the statute presently in question, as in the *Elrod* ... case[ ], gives the General Assembly no voice in the selection of committee members; its reach extends solely to providing a method of selection with reasonable criteria to generate commission members qualified for the position through participation of an organization, the Kentucky Association of Realtors, which is independent of legislative control.[47]

And, in *Kraus v. Kentucky State Senate*,[48] we addressed the constitutionality of a statute requiring the Kentucky Senate's approval for administrative law judges appointed by the Workers' Compensation Board. We held that the statute did not unconstitutionally infringe upon the executive branch's appointment power because "there is a difference between the power to appoint and the power to confirm or reject an appointment by another branch of government"[49] and "[t]he statute in question does not *permit the Senate to*

**45.** Ky., 817 S.W.2d 213 (1991).

**46.** *Elrod v. Willis, supra* note 44 at 20:

> [Appellants] insist, first, that [the Act] places an unconstitutional restriction on the Governor's power of appointment, and is, therefore, violative of sections 27 and 28 of our Constitution.... *[T]he Legislature has not attempted to appoint administrative officers,* nor has it completely denied the appointive function of the Executive. It has simply limited the Governor's selection to a list of men named by an organization which is not affected by the limitation of Section 27. It merely sets in motion the machinery by which its purpose will be effected. The limitation imposed is a recognition that organizations whose objectives coincide with

the objections of the law creating the agency, may render a material service to the Governor by nominating men to staff that agency who are qualified by interest, experience and background. The method used in the instant action follows an established custom.... We must, therefore, reject appellant's contention.

*Id.* (emphasis added); *Kentucky Association of Realtors, Inc. v. Musselman, supra* note 45 at 217.

**47.** *Kentucky Association of Realtors, Inc. v. Musselman, supra* note 45 at 216–217.

**48.** Ky., 872 S.W.2d 433 (1994).

**49.** *Id.* at 435.

*make appointments* of administrative law judges but only to accept or reject the decision of the Workers' Compensation Board." [50]

 Considered together, these cases illustrate that, while the legislature may affect the executive branch's appointments by establishing before-and-after-the-fact parameters for the executive branch's exercise of the power to make appointments, the legislature *cannot itself exercise the executive power of appointment.* And, in a broader sense, while it is constitutionally permissible (and common) for one branch of government to "participate," or play a role, in another branch's exercise of its constitutional functions, Section 28 means what it says. Accordingly, by permitting the judiciary to exercise the purely executive function of granting parole, KRS 439.575 violates Section 28 of the Kentucky Constitution, and the executive branch's participation in the judiciary's exercise of its power does not alter that fact.

### IV. CONCLUSION

For the above reasons, we affirm the decision of the Court of Appeals.

All concur.

---

50. *Id.* at 438 (emphasis added).